

# THE SUPREME COURT OF TEXAS
Post Office Box 12248
Austin, Texas 78711

(512) 463-1312

July 03, 2014

Mr. Darrin M. Walker
Law Office of Darrin Walker
6134 Riverchase Glen Drive
Kingwood, TX 77345

Mr. Robert T. Cain Jr.
Alderman & Cain PLLC
P.O. Box 153237
Lufkin, TX 75915-0237

RE:  Case Number: 10-0846
     Court of Appeals Number: 12-08-00368-CV
     Trial Court Number: 39,829-06-08

Style:  BROOKSHIRE BROTHERS, LTD.
        v.
        JERRY ALDRIDGE



FILED IN COURT OF APPEALS
12th Court of Appeals District

JUL 07 2014

TYLER TEXAS
CATHY S. LUSK, CLERK

Dear Counsel:

Today the Supreme Court of Texas issued an opinion(s) and judgment in the above-referenced cause. You may obtain a copy of the opinion(s) and judgment through Case Search on our Court's webpage at: http://www.supreme.courts.state.tx.us/. On the Case Search page simply enter the case number and push the Search button to find the docket page for your case.

Sincerely,

Blake A. Hawthorne

Blake A. Hawthorne, Clerk
by Claudia Jenks, Chief Deputy Clerk

c Ms. Reba
c Squyres
: Clerk
  Ms. Diana L.
  Faust
  Ms. Cathy S.
  Lusk
  Mr. Brock C.
  Akers
  Ms. Allison



# THE SUPREME COURT OF TEXAS
**Post Office Box 12248**
**Austin, Texas 78711**

**(512) 463-1312**

Haver
Gabbert

# IN THE SUPREME COURT OF TEXAS

No. 10-0846

BROOKSHIRE BROTHERS, LTD., PETITIONER,

v.

JERRY ALDRIDGE, RESPONDENT

---

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

---

**Argued September 12, 2012**

JUSTICE LEHRMANN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE WILLETT, and JUSTICE BOYD joined.

JUSTICE GUZMAN filed a dissenting opinion, in which JUSTICE DEVINE and JUSTICE BROWN joined.

A fundamental tenet of our legal system is that each and every trial is decided on the merits of the lawsuit being tried. After all, reaching the correct verdict is the goal of a fair and impartial judiciary. However, when the spoliation of evidence is at issue, this goal is hampered in conflicting ways. First, as is the case when evidence is lost or destroyed for any reason, spoliation can deprive the factfinder of relevant evidence, which can in turn negatively impact the fairness of the trial. Trial courts therefore must have wide discretion in remedying such conduct and in imposing sanctions to deter it. However, the imposition of a severe spoliation sanction, such as a spoliation jury

instruction, can shift the focus of the case from the merits of the lawsuit to the improper conduct that was allegedly committed by one of the parties during the course of the litigation process. The problem is magnified when evidence regarding the spoliating conduct is presented to a jury. Like the spoliating conduct itself, this shift can unfairly skew a jury verdict, resulting in a judgment that is based not on the facts of the case, but on the conduct of the parties during or in anticipation of litigation.

Modern technology has added another layer of complexity to these competing concerns. Due to the exponential increase in the volume of electronic data being generated and stored, maintaining the balance between the significant interest in preserving relevant evidence and the burdens associated with doing so has become increasingly difficult.

Today we enunciate with greater clarity the standards governing whether an act of spoliation has occurred and the parameters of a trial court's discretion to impose a remedy upon a finding of spoliation, including submission of a spoliation instruction to the jury. We first hold that a spoliation analysis involves a two-step judicial process: (1) the trial court must determine, as a question of law, whether a party spoliated evidence, and (2) if spoliation occurred, the court must assess an appropriate remedy. To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so. Spoliation findings—and their related sanctions—are to be determined by the trial judge, outside the presence of the jury, in order to avoid unfairly prejudicing the jury by the presentation of evidence that is unrelated to the facts underlying the lawsuit. Accordingly, evidence bearing directly upon whether a party has spoliated evidence is

not to be presented to the jury except insofar as it relates to the substance of the lawsuit. Upon a finding of spoliation, the trial court has broad discretion to impose a remedy that, as with any discovery sanction, must be proportionate; that is, it must relate directly to the conduct giving rise to the sanction and may not be excessive. Key considerations in imposing a remedy are the level of culpability of the spoliating party and the degree of prejudice, if any, suffered by the nonspoliating party.

While the spectrum of remedies that may be imposed range from an award of attorney's fees to the dismissal of the lawsuit, the harsh remedy of a spoliation instruction is warranted only when the trial court finds that the spoliating party acted with the specific intent of concealing discoverable evidence, and that a less severe remedy would be insufficient to reduce the prejudice caused by the spoliation. This intent requirement is congruent with the presumption underlying a spoliation instruction—that the evidence would have hurt the wrongdoer. A failure to preserve evidence with a negligent mental state may only underlie a spoliation instruction in the rare situation in which a nonspoliating party has been irreparably deprived of any meaningful ability to present a claim or defense.

In the underlying slip-and-fall premises-liability case, we are asked to determine whether the trial court erred in charging the jury with a spoliation instruction when a premises owner retained the requested portion of surveillance video footage of the plaintiff's fall, but allowed additional footage to be automatically erased. Applying the standard enunciated today, we hold that imposition of the severe sanction of a spoliation instruction was an abuse of discretion. We need not address the propriety of a particular lesser sanction because none was requested or imposed. We further hold

3

that the trial court erred in admitting evidence of the circumstances of the spoliating conduct. Because these errors were not harmless, we reverse the court of appeals' judgment and remand the case for a new trial in accordance with this opinion.

## I. Background

On September 2, 2004, Jerry Aldridge slipped and fell near a display table at a Brookshire Brothers grocery store. At the time of the fall, Aldridge did not tell store employees that he was injured, and the store did not investigate the fall or complete an incident report. However, about an hour-and-a-half after leaving the store, Aldridge went to the emergency room because of pain. On September 7, Aldridge returned to the store and reported his injuries. Jon Tyler, a store manager trainee, prepared an incident report based on Aldridge's statements and the recollections of the assistant manager who was on duty at the time of Aldridge's fall. The incident report stated that "Aldridge slipped on grease that had leaked out of a container by the 'Grab N Go.'" The Grab-N-Go, which featured rotisserie chickens that were cooked and packaged in the store's deli, was located approximately fifteen feet from the area of the fall.

Aldridge's fall was captured by a surveillance camera mounted near the check-out counters. Because of the camera's placement, the floor where Aldridge fell was in the background and was obscured by a display table, which was covered with a cloth that extended to the floor. At the time of the fall, the cameras recorded surveillance video in a continuous loop that, after approximately thirty days, recorded over prior events. After Aldridge reported his injuries to Brookshire Brothers, Robert Gilmer, Brookshire Brothers' Vice President of Human Resources and Risk Management,

4

decided to retain and copy approximately eight minutes of the video, starting just before Aldridge entered the store and concluding shortly after his fall.

Aldridge learned that Brookshire Brothers possessed video footage of the incident and, on September 13, asked the claims department for a copy so he could see his fall. Gilmer testified that he instructed the claims department not to provide the tape to Aldridge, as Gilmer believed it would be improper. The claims department wrote Aldridge a letter on September 29 stating that there was only one copy of the video at that time and that it therefore could not provide him with a copy. The camera presumably recorded over the September 2 footage by early October.

Brookshire Brothers initially paid Aldridge's medical expenses,[1] but ceased paying by June 2005, when Gilmer wrote Aldridge a letter stating that he had reviewed the video and determined that Brookshire Brothers was going to deny responsibility. In August 2005, Aldridge's attorney sent Brookshire Brothers a letter requesting approximately two-and-a-half hours of additional footage from the store cameras. Brookshire Brothers was unable to comply with that request because the footage had been recorded over almost a year earlier.

Aldridge sued Brookshire Brothers, claiming injuries from a slip and fall under a premises-liability theory. To recover in a slip-and-fall case, a plaintiff must prove, *inter alia*, that the defendant had actual or constructive knowledge of a dangerous condition on the premises such as a slippery substance on the floor, *Keech v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992), which may be accomplished with a showing that "(1) the defendant placed the substance on the floor, (2) the

---

[1] With respect to customers injured in its store, Brookshire Brothers had a routine practice of paying an initial medical bill as well as paying for one follow-up visit and associated prescriptions. As to Aldridge, Brookshire Brothers also authorized payment for a visit to a neurosurgeon and several weeks of physical therapy.

defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it," *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). Aldridge argued in the trial court that Brookshire Brothers' failure to preserve additional video footage amounted to spoliation of evidence that would have been helpful to the key issue of whether the spill was on the floor long enough to give Brookshire Brothers a reasonable opportunity to discover it. Aldridge accordingly moved for a spoliation jury instruction.

The trial court allowed the jury to hear evidence bearing on whether Brookshire Brothers spoliated the video, submitted a spoliation instruction to the jury, and permitted the jury to decide whether spoliation occurred during its deliberations on the merits of the lawsuit. The principal witness to testify on the circumstances surrounding the preservation of the video was Gilmer, who had made the decision regarding the amount of video footage to preserve after Aldridge's incident report was completed. Gilmer testified at trial that he had instructed Tyler to save the portion showing the fall and the five or six minutes before the fall so as to try to identify Aldridge entering the store. He further testified that the purpose of saving the video was to verify that Aldridge had actually fallen and that Gilmer believed the rest of the video, which he had not viewed, "[w]asn't relevant." Gilmer verified his understanding that a key legal issue in a slip-and-fall case is whether store employees knew or should have known there was something on the floor that caused the fall.[2] However, he maintained that when the decision was made to preserve the video he "didn't know

<hr/>

[2] Gilmer testified that he had worked in the grocery store business for forty-four years. As Vice President of Human Resources and Risk Management, Gilmer headed Brookshire Brothers' risk management department, which included managing the company's litigation.

there was going to be a case." At that time, "[i]t was just a man who made a claim that he slipped and fell in the store," and the actions relating to the video were not taken "in anticipation of this trial."

The trial court submitted the following spoliation instruction to the jury:

In this case, Brookshire Brothers permitted its video surveillance system to record over certain portions of the store surveillance video of the day of the occurrence in question. If you find that Brookshire Brothers knew or reasonably should have known that such portions of the store video not preserved contained relevant evidence to the issues in this case, and its non-preservation has not been satisfactorily explained, then you are instructed that you may consider such evidence would have been unfavorable to Brookshire Brothers.

The jury determined that Brookshire Brothers' negligence proximately caused Aldridge's fall and awarded Aldridge $1,063,664.99 in damages. The court of appeals affirmed the trial court's judgment on the verdict, holding that the trial court did not abuse its discretion in admitting evidence of spoliation or charging the jury with the spoliation instruction.

## II. Spoliation Analysis

The spoliation of evidence is a serious issue. A party's failure to reasonably preserve discoverable evidence may significantly hamper the nonspoliating party's ability to present its claims or defenses, *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003), and can "undermine the truth-seeking function of the judicial system and the adjudicatory process," Justice Rebecca Simmons and Michael J. Ritter, *Texas's Spoliation "Presumption"*, 43 St. Mary's L.J. 691, 701 (2012); *see also Trevino v. Ortega*, 969 S.W.2d 950, 954 (Tex. 1998) (Baker, J., concurring) (observing that "[e]vidence spoliation is a serious problem that can have a devastating effect on the administration of justice"). As one federal district court has explained, "[d]ocuments

7

create a paper reality we call proof. The absence of such documentary proof may stymie the search for the truth." *Zubulake v. UBS Warburg L.L.C.*, 220 F.R.D. 212, 214 (S.D.N.Y. 2003) (citations and internal quotation marks omitted). In some circumstances, a missing piece of evidence like a photograph or video can be irreplaceable. Testimony as to what the lost or destroyed evidence might have shown will not always restore the nonspoliating party to an approximation of its position if the evidence were available; sometimes a picture is indeed worth a thousand words.

In light of these concerns, courts have broad discretion to utilize a variety of remedies to address spoliation, including the spoliation instruction. *See* Andrew Hebl, *Spoliation of Electronically Stored Information, Good Faith, and Rule 37(e)*, 29 N. ILL. U. L. REV. 79, 86 (2008). The instruction is an important remedy, but its use can affect the fundamental fairness of the trial in ways as troubling as the spoliating conduct itself. As we have recognized, "[b]ecause the instruction itself is given to compensate for the absence of evidence that a party had a duty to preserve, its very purpose is to 'nudge' or 'tilt' the jury" toward a finding adverse to the alleged spoliator. *Wal-Mart Stores*, 106 S.W.3d at 724. Thus, an unfortunate consequence of submitting a spoliation instruction is that it "often ends litigation" because "it is too difficult a hurdle for the spoliator to overcome." *Zubulake*, 220 F.R.D. at 219. This "nudging" or "tilting" of the jury is magnified by the presentation of evidence that emphasizes the spoliator's wrongful conduct rather than the merits of the suit.

Added to these concerns are the complexities surrounding evidence preservation in today's world, as technology has advanced to allow potential litigants to store larger volumes of electronic information. *See* Simmons and Ritter, *Texas's Spoliation "Presumption"*, 43 ST. MARY'S L.J. at 701. Thus, while electronic data can be a valuable source of evidence, it can also make compliance

8

with one's responsibility to preserve and produce such data much more difficult and expensive. *See id.* at 702; Robert Hardaway, et al., *E-Discovery's Threat to Civil Litigation: Reevaluating Rule 26 for the Digital Age*, 63 RUTGERS L. REV. 521, 522 (2011). Because of the prevalence of discoverable electronic data and the uncertainties associated with preserving that data, sanctions concerning the spoliation of electronic information have reached an all-time high. Dan H. Willoughby, Jr., et al., *Sanctions for E-Discovery Violations: By the Numbers*, 60 DUKE L.J. 789, 790 (2010).

Because of these and other myriad concerns, the Federal Rules of Civil Procedure were amended in 2006 to prohibit federal courts from imposing sanctions when discoverable electronic evidence is lost "as a result of the routine, good-faith operation of an electronic information system." FED. R. CIV. P. 37(e).[3] The Texas rules do not contain a comparable provision, but the challenges facing Texas courts are just as acute. Merits determinations are significantly affected by both spoliation instructions and the conduct that gives rise to them. We have observed that when a party is inherently prevented from having the merits of its case adjudicated, constitutional due process is implicated. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917–18 (Tex. 1991) (discussing constitutional limitations on the power of courts to adjudicate a party's claims without regard to the merits, but instead based on a party's conduct in discovery). In light of these concerns,

---

[3] Rule 37(e) is in the process of being amended again. Following the receipt of public comment, the Advisory Committee on Civil Rules recommended a proposed amended rule for adoption by the Committee on Rules of Practice and Procedure. *See* Hon. David G. Campbell, Advisory Committee on Civil Rules, *Report of Advisory Committee on Civil Rules*, 306–17 (May 2, 2014), http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Agenda%20Books/ Standing/ST2014-05.pdf#pagemode=bookmarks. The Standing Committee approved the proposal at its May 29, 2014 meeting. Thomas Y. Allman, *Standing Committee OKs Federal Discovery Amendments*, LAW TECHNOLOGY NEWS (June 2, 2014), http://www.lawtechnologynews.com/id=1202657565227?slreturn=20140505130019.

we granted review of Brookshire Brothers' petition in order to bring much-needed clarity to our state's spoliation jurisprudence.

## A. Development of Spoliation Law in Texas

In Texas, spoliation is an evidentiary concept rather than a separate cause of action. *Trevino*, 969 S.W.2d at 952. In declining to recognize spoliation as an independent tort in *Trevino*, we acknowledged that courts must have "adequate measures to ensure that it does not improperly impair a litigant's rights." *Id.* at 953. Thus, when evidence is lost, altered, or destroyed, trial courts have the discretion to impose an appropriate remedy so that the parties are restored to a rough approximation of what their positions would have been were the evidence available. *Wal-Mart Stores*, 106 S.W.3d at 721. As discussed further below, Texas courts necessarily enjoy wide latitude in remedying acts of discovery abuse, including evidence spoliation. *Trevino*, 969 S.W.2d at 953.

Neither the Texas Rules of Evidence nor the Texas Rules of Civil Procedure specifically address spoliation. However, this Court recognized the concept as early as 1852, when we adopted the principle that all things are presumed against the wrongdoer; this is known as the spoliation presumption. *See Cheatham v. Riddle*, 8 Tex. 162, 167 (1852) (citation omitted) (stating that "[e]verything is to be presumed *in odium spoliatoris*"); *see also Trevino*, 969 S.W.2d at 952 (observing that "[e]vidence spoliation is not a new concept" and that "all things are presumed against a wrongdoer"). However, our guidance in this area has been limited to a small spattering of cases in the nineteenth century[4] and several more in the last twenty years.[5]

---

[4] *See Curtis & Co. Mfg. v. Douglas*, 15 S.W. 154, 155 (Tex. 1890) (noting that nonpreservation of evidence was "a circumstance to be considered by the jury"); *Underwood v. Coolgrove*, 59 Tex. 164, 170 (1883) (recognizing that the refusal to produce evidence in a party's possession without explanation as to why it was not produced creates the

The courts of appeals have generally followed two basic frameworks in evaluating the propriety of a spoliation remedy. The first is that established by Justice Baker's oft-cited concurring opinion in *Trevino v. Ortega*. Under this analytical framework, a party may be entitled to a remedy for the opposing party's spoliation of evidence if the party establishes three elements: (1) the party who destroyed or failed to produce evidence had a duty to preserve it; (2) the party either negligently or intentionally breached that duty by destroying the evidence or rendering it unavailable; and (3) the breach prejudiced the nonspoliating party. *Trevino*, 969 S.W.2d at 955–58 (Baker, J., concurring). In evaluating prejudice, Justice Baker suggested that courts should consider the destroyed evidence's relevance, whether other cumulative evidence exists to take the place of the spoliated evidence, and whether the destroyed evidence supports "key issues in the case." *Id.* at 958.

The second distinct framework applied by the courts of appeals focuses on the so-called presumptions arising from a party's destruction of or failure to produce evidence. As we recognized in *Wal-Mart Stores*, the courts of appeals have generally limited the use of a spoliation instruction to two circumstances (generally referred to as the "two rules"): (1) a party's deliberate destruction of relevant evidence, and (2) a party's failure to produce relevant evidence or explain its nonproduction. 106 S.W.3d at 721. Under the first rule, a presumption arises that a party who deliberately destroys evidence does so because it is unfavorable to the party's case. *Id.* Under the

---

belief that it would not aid the case of the nonproducing party); *Cheatham*, 8 Tex. at 162.

[5] *See Trevino*, 969 S.W.2d at 952 (refusing to recognize an independent tort of spoliation); *Wal-Mart Stores*, 106 S.W.3d at 722 (concluding that a party must possess a duty to preserve evidence in order for a spoliation instruction to be proper); *see also Cire v. Cummings*, 134 S.W.3d 835, 841 (Tex. 2004) (holding that party's "deliberate[]" destruction of relevant evidence justified death-penalty sanctions).

11

second, the same presumption arises because the party who controls the missing evidence is unable to explain its failure to produce the evidence. *Id.* at 722.[6] Though we have never expressly adopted these two rules, both derive from our nineteenth-century precedent. *See Cheatham*, 8 Tex. at 167 (recognizing that all things are presumed against a wrongdoer); *Underwood*, 50 Tex. at 170 (observing that a failure to produce evidence without explanation creates a belief that it would not aid the nonproducing party's case). Some courts of appeals have referred solely to the two rules in determining the propriety of a spoliation instruction, *see, e.g., Brumfield v. Exxon Corp.*, 63 S.W.3d 912, 920 (Tex. App.—Houston [14th Dist.] 2002, pet. denied), while others—including the court of appeals in the instant case—have referred to both Justice Baker's framework and the two rules in determining whether the trial court abused its discretion in charging the jury with a spoliation instruction, ___ S.W.3d ___, ___; *see also Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 56 (Tex. App.—Corpus Christi 2001, no pet.); *Whiteside v. Watson*, 12 S.W.3d 614, 621 (Tex. App.—Eastland 2000, pet. dism'd by agr.).

## B. Spoliation Framework

Because we have never crafted a complete analytical framework for determining whether an act of spoliation has occurred, we first focus on the elements that must be satisfied to warrant a finding of spoliation and the corresponding imposition of an appropriate remedy. As an initial

---

[6] The Texas spoliation presumption is a confusing concept that has not been uniformly applied. *See generally* Justice Rebecca Simmons and Michael J. Ritter, *Texas's Spoliation "Presumption"*, 43 ST. MARY'S L.J. 691 (2012). In Texas, courts usually use the term "presumption," while federal courts generally refer to a spoliation instruction as an "adverse inference" instruction. *See id.* at 716, 769.

matter, however, we address whether it is the responsibility of the trial court or the jury to make this determination.

### 1. The Trial Court Determines Whether Evidence Was Spoliated and the Proper Remedy

As discussed above, spoliation is an evidentiary concept, not a separate cause of action. *See Trevino*, 969 S.W.2d at 952. It is well-established that evidentiary matters are resolved by the trial court. *See, e.g., City of San Antonio v. Pollock*, 284 S.W.3d 809, 823 (Tex. 2009). Further, spoliation is essentially a particularized form of discovery abuse, in that it ultimately results in the failure to produce discoverable evidence, and discovery matters are also within the sole province of the trial court. Finally, presenting spoliation issues to the jury for resolution magnifies the concern that the focus of the trial will shift from the merits to a party's spoliating conduct. For these reasons, we agree with Justice Baker that the trial court, rather than the jury, must determine whether a party spoliated evidence and, if so, impose the appropriate remedy. *See Trevino*, 969 S.W.2d at 954 (Baker, J., concurring); *see also Massie v. Hutcheson*, 270 S.W. 544, 545 (Tex. Comm'n App. 1925, holding approved) (stating that determining whether a party intentionally destroyed evidence is a preliminary question for the court to decide). The trial court may hold an evidentiary hearing to assist the court in making spoliation findings, but not in the presence of the jury. Placing the responsibility on the trial court to make spoliation findings and to determine the proper remedy is a key mechanism in ensuring the jury's focus stays where it belongs—on the merits.

### 2. Spoliation Finding

With this background in mind, we turn to the elements that underlie a trial court's spoliation finding, beginning with the issue of duty. We have held that a party alleging spoliation bears the

13

burden of establishing that the nonproducing party had a duty to preserve the evidence. *See Wal-Mart Stores*, 106 S.W.3d at 722. The standard governing the duty to preserve resolves two related inquiries: when the duty is triggered, and the scope of that duty. Specifically, we observed in *Wal-Mart Stores* that "[s]uch a duty arises only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." *Id.* In turn, a "substantial chance of litigation" arises when "litigation is more than merely an abstract possibility or unwarranted fear." *National Tank Co. v. Brotherton*, 851 S.W.2d 193, 204 (Tex. 1993) (citation and internal quotation marks omitted); *see also id.* ("Common sense dictates that a party may reasonably anticipate suit being filed . . . before the plaintiff manifests an intent to sue.").[7]

Second, we have implicitly recognized, and now do so explicitly, that the party seeking a remedy for spoliation must demonstrate that the other party breached its duty to preserve material and relevant evidence. *See Wal-Mart Stores*, 106 S.W.3d at 722 (observing that the *initial* inquiry in determining if discovery abuse has occurred is whether a party has a duty to preserve evidence). If a party possesses a duty to preserve evidence, it is inherent that a party breaches that duty by failing to exercise reasonable care to do so. Otherwise, the nonspoliating party would have no legitimate reason to seek a spoliation remedy. Further, we agree with Justice Baker that the breach may be either intentional or negligent. *Trevino*, 969 S.W.2d at 957 (Baker, J., concurring) ("Because

---

[7] Federal courts have struggled with the issue of when a duty to preserve is triggered and the scope of that duty, especially as it relates to electronic data and "litigation holds." *See generally* Paul W. Grimm, et al., *Proportionality in the Post-Hoc Analysis of Pre-Litigation Preservation Decisions*, 37 U. BALT. L. REV. 381 (2008) (discussing the perplexing issue in federal courts of the duty to preserve as it relates to electronically stored information).

14

parties have a duty to reasonably preserve evidence, it is only logical that they should be held accountable for either negligent or intentional spoliation.").[8]

### 3. Spoliation Remedies

After a court determines that a party has spoliated evidence by breaching its duty to preserve such evidence, it may impose an appropriate remedy. Rule 215.2 of the Texas Rules of Civil Procedure enumerates a wide array of remedies available to a trial court in addressing discovery abuse, such as an award of attorney's fees or costs to the harmed party, exclusion of evidence, striking a party's pleadings, or even dismissing a party's claims. *See* TEX. R. CIV. P. 215.2–.3. These remedies are available in the spoliation context. *Trevino*, 969 S.W.2d at 953. The trial court also has discretion to craft other remedies it deems appropriate in light of the particular facts of an individual case, including the submission of a spoliation instruction to the jury. *Id.*

In accordance with our well-settled precedent on remedying discovery abuse, however, the remedy must have a direct relationship to the act of spoliation and may not be excessive. *See TransAmerican*, 811 S.W.2d at 917. In other words, the remedy crafted by the trial court must be proportionate when weighing the culpability of the spoliating party and the prejudice to the nonspoliating party. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) (in crafting a remedy for spoliation, assessing (1) the degree of fault of party who failed to preserve evidence, (2) the degree of prejudice suffered by the opposing party, and (3) whether there is a lesser

[8] It follows that a party does not breach its duty to preserve relevant evidence if such evidence is lost or destroyed through no fault of the party from whom the evidence is sought, such as by an act of God. Given that spoliation sanctions, while primarily remedial, also serve a punitive purpose, they are not appropriately imposed against an innocent party, regardless of the extent to which another party is prejudiced. *See Trevino*, 969 S.W.2d at 957 (Baker, J., concurring) (comparing the "culpable" spoliating party with the "innocent" nonspoliating party).

15

sanction that will avoid substantial unfairness to the opposing party); Maria Perez Crist, *Preserving the Duty to Preserve: The Increasing Vulnerability of Electronic Information*, 58 S.C. L. REV. 7, 44 (2006) (noting that federal courts generally follow the three-part test outlined in *Schmid* in determining the appropriate sanction for spoliation). This logically follows from the remedial purpose undergirding the imposition of a spoliation remedy under Texas law, which is to restore the parties to a rough approximation of their positions if all evidence were available. *See Wal-Mart Stores*, 106 S.W.3d at 721.

The courts of appeals evaluate prejudice largely on the considerations Justice Baker espoused in his *Trevino* concurrence.[9] These include the relevance of the spoliated evidence to key issues in the case, the harmful effect of the evidence on the spoliating party's case (or, conversely, whether the evidence would have been helpful to the nonspoliating party's case), and whether the spoliated evidence was cumulative of other competent evidence that may be used instead of the spoliated evidence. *Trevino*, 969 S.W.2d at 958 (Baker, J., concurring); *see, e.g., Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 666 (Tex. App.—Houston [1st Dist.] 1998, no pet.). These factors have proved workable in the courts of appeals, are similar to the test followed by federal courts, and provide guidance to the trial courts in analyzing prejudice in a specific case. *See, e.g., Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 615–16 (S.D. Tex. 2010) (discussing the prejudice factor of adverse inference analysis). Accordingly, we adopt them.

---

[9] Justice Baker opined that prejudice should be analyzed both as a yes-or-no element of spoliation and as a factor in imposing a remedy. *Trevino*, 969 S.W.2d at 955–58 (Baker, J., concurring). We think this two-step analysis is unnecessary and that analyzing prejudice as a key factor in imposing a spoliation remedy contemplates that some degree of prejudice is required for the nonspoliating party to be entitled to a remedy.

In light of the difficulty of conducting a prejudice analysis based on evidence that is no longer available for review, we recognize that a party's intentional destruction of evidence[10] may, "[a]bsent evidence to the contrary," be sufficient by itself to support a finding that the spoliated evidence is both relevant and harmful to the spoliating party. *See Trevino*, 969 S.W.2d at 958 (Baker, J., concurring). This flows from the common-law spoliation presumption that all things are presumed against the wrongdoer.[11] Conversely, negligent spoliation could not be enough to support such a finding without "some proof about what the destroyed evidence would show."[12] *Id.* In any event, the trial court should of course consider all evidence bearing on the factors associated with evaluating prejudice to the nonspoliating party. *Id.*

We note, however, that a trial court should exercise caution in evaluating the final prejudice factor, which accounts for the existence of cumulative evidence. For example, a spoliating party might argue that no prejudice resulted from spoliation of a video of an incident because there is also eyewitness testimony regarding the incident. But many of the inherent problems with such testimony—inaccurate memory, poor eyesight, bias, etc.—are simply not present with a video recording. Again, a picture is often worth a thousand words. The same can be true with respect to testimony regarding the contents of a destroyed document, compared to the document itself. The

---

[10] We discuss in detail below what is required to demonstrate that a party "intentionally" spoliated evidence.

[11] Some federal courts endorse this viewpoint as well. *See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002).

[12] This does not mean that the contents of the missing evidence must be conclusively proven, as they can be demonstrated through circumstantial evidence. *See, e.g., Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 110 (2d Cir. 2001) (observing that "a party seeking an adverse inference may rely on circumstantial evidence to suggest the contents of destroyed evidence"); *Reece*, 81 S.W.3d at 817 (noting that circumstantial evidence may establish a fact when that fact is "inferred from other facts proved in the case") (citation and internal quotation marks omitted).

17

differences in kind and quality between the available evidence and the spoliated evidence will thus be a key factor in analyzing prejudice to the nonspoliating party.

## C. Spoliation Instruction as a Remedy

Having laid out the general framework governing spoliation findings and remedies, we turn to the particular remedy at issue in this case—the submission of an instruction to the jury to presume that the missing evidence would have been unfavorable to the spoliator. Though we have generally described the purpose of a spoliation remedy in remedial rather than punitive terms, *see Wal-Mart Stores*, 106 S.W.3d at 721, a spoliation instruction is still inherently a sanction, *see Trevino*, 969 S.W.2d at 953.[13] Further, it is among the harshest sanctions a trial court may utilize to remedy an act of spoliation. *See, e.g., Zubulake*, 220 F.R.D. at 220 (describing a spoliation instruction as "an extreme sanction" that "should not be given lightly"); *Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d at 619 (characterizing a spoliation instruction "as among the most severe sanctions a court can administer"). Because a spoliation instruction has the propensity to tilt a trial in favor of a nonspoliating party, it can, in some sense, be tantamount to a death-penalty sanction. *See Wal-Mart Stores*, 106 S.W.3d at 724; *TransAmerican*, 811 S.W.2d at 917–18; *Zubulake*, 220 F.R.D. at 219–20. At the same time, the destruction of relevant evidence can also unfairly skew the outcome of a trial. Thus, improper use of a spoliation instruction can deprive either party of the right to a fair trial on the merits of the case. It follows that an instruction should be available to address spoliation in certain circumstances, but should be used cautiously. *See TransAmerican*, 811 S.W.2d at 917.

---

[13] *See also, e.g., Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (describing an adverse inference instruction as a sanction); *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 449 (4th Cir. 2004) (same).

## 1. Culpability

The competing considerations outlined above have led courts to grapple with the specific issue of whether a spoliation instruction can ever be an appropriate remedy for negligent spoliation. Though the issue has split both federal and state courts,[14] there has been little discussion of this issue in our courts of appeals,[15] and we previously left open the question of the requisite culpable mental state to warrant submission of a spoliation instruction. *See Wal-Mart Stores*, 106 S.W.3d at 722 (declining to decide whether a spoliation instruction is justified when evidence is unintentionally lost or destroyed).

For several reasons, and with a narrow exception we will explain below, we conclude that a party must intentionally spoliate evidence in order for a spoliation instruction to constitute an appropriate remedy. Although some Texas courts of appeals have approved spoliation instructions on the basis of negligent spoliation, this approach lacks a basis in Texas common law. *See, e.g., Adobe Land Corp. v. Griffin, L.L.C.*, 236 S.W.3d 351, 360–61 (Tex. App.—Fort Worth 2007, pet. denied). First, we have expressly stated that a spoliation instruction may be given when a party *deliberately* destroys evidence. *Cire*, 134 S.W.3d at 843. Second, a person who merely negligently destroys evidence lacks the state of mind of a "wrongdoer," and it makes little sense to infer that a party who only negligently lost or destroyed evidence did so because it was unfavorable to the party's case. Courts that allow a negligent state of mind to warrant the submission of a spoliation

---

[14] *See* Margaret M. Koesel and Tracey L. Turnbull, *Spoliation of Evidence: Sanctions and Remedies for Destruction of Evidence in Civil Litigation* 64–65 (Daniel F. Gourash ed., 2d ed. 2006).

[15] *See* Simmons and Ritter, *Texas's Spoliation "Presumption"*, 43 St. Mary's L.J. at 757.

19

instruction tend to reason that the need to deter and punish spoliation is a sufficient basis for the instruction. *See* Koesel and Turnbull, *Spoliation of Evidence: Sanctions and Remedies for Destruction of Evidence in Civil Litigation*, at 65–66. However, in Texas, the instruction is based on the presumption of wrongdoing, so it follows that the more appropriate requirement is intent to conceal or destroy discoverable evidence.

Our analysis of Rule 215 discovery sanctions in *TransAmerican* and its progeny, in which we held that there must be a direct relationship between the offensive conduct and the sanction imposed, and that the sanction may not be excessive, also compels our conclusion. *TransAmerican*, 811 S.W.2d at 917. As we observed, "sanctions that are so severe as to inhibit presentation of the merits of a case should be reserved to address a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883 (Tex. 2003). Though *TransAmerican* specifically interpreted a requirement in Rule 215 that any sanction imposed be "just," the spirit of its analysis applies equally in the context of spoliation instructions. *See TransAmerican*, 811 S.W.2d at 917. To allow such a severe sanction as a matter of course when a party has only negligently destroyed evidence is neither just nor proportionate. *Id.*

Finally, our approach aligns with a majority of the federal courts of appeals. *See United States v. Laurent*, 607 F.3d 895, 902–03 (1st Cir. 2010) (requiring bad faith for adverse inference instruction); *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1219–20 (10th Cir. 2008) (intentionality or bad faith necessary for spoliation instruction); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (spoliator must intentionally destroy evidence in bad faith to warrant

20

adverse inference instruction); *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (observing that a spoliation sanction requires a finding of intentional destruction that indicates a desire to suppress the truth); *Hodge*, 360 F.3d at 450 (adverse inference instruction is only available when the spoliating party knew the evidence was relevant to an issue at trial and his willful conduct resulted in the evidence's loss or destruction); *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (nonspoliating party must show that spoliating party destroyed evidence in bad faith to establish entitlement to an adverse inference); *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1294 (11th Cir. 2003) (adverse inference may only be drawn when the failure to preserve evidence is done in bad faith).[16] We believe this approach is consistent with our jurisprudence and is the most practical in this era of complex electronic discovery.

Because of the significant consequences stemming from a finding that spoliation is intentional, further discussion of the meaning of "intentional" in this context is warranted. By "intentional" spoliation, often referenced as "bad faith" or "willful" spoliation, we mean that the party acted with the subjective purpose of concealing or destroying discoverable evidence. This includes the concept of "willful blindness," which encompasses the scenario in which a party does not directly destroy evidence known to be relevant and discoverable, but nonetheless "allows for its

---

[16] *But see Beavem*, 622 F.3d at 554 (adverse inference appropriate when a party destroys evidence knowingly or negligently); *Residential Funding Corp.*, 306 F.3d at 108 (same); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (spoliation instruction may be given when spoliator acts with less than bad faith).

21

destruction."[17] Hebl, *Spoliation of Electronically Stored Information, Good Faith, and Rule 37(e)*, 29 N. ILL. U. L. REV. at 97–98.

Accordingly, we hold that a trial court's finding of intentional spoliation pursuant to the analysis set forth above is a necessary predicate to the proper submission of a spoliation instruction to the jury. In the event the trial court makes such a finding and concludes, as with any sanction, that a lesser remedy would be insufficient to ameliorate the prejudice caused by the spoliating party's conduct, the trial court is within its discretion in submitting an instruction. *See TransAmerican*, 811 S.W.2d at 917 (holding that, because a discovery sanction "should be no more severe than necessary to satisfy its legitimate purposes," the trial court must determine that lesser sanctions constitute an insufficient remedy); *Cire*, 134 S.W.3d at 842 (holding that the trial court "must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed").

### 2. Caveat Authorizing Instruction in Context of Negligent Spoliation

Our conclusion regarding the requisite state of mind to justify a jury instruction, however, must include a narrow caveat. On rare occasions, a situation may arise in which a party's negligent

---

[17] The issue of willful blindness is especially acute in the context of automatic electronic deletion systems. A party with control over one of these systems who intentionally allows relevant information to be erased can hardly be said to have only negligently destroyed evidence, though we recognize the complexities of these determinations when a potential litigant who controls massive volumes of electronic data is attempting to determine, prelitigation, which information is likely to be discoverable. *See, e.g.*, Hardaway, et al., *E-Discovery's Threat to Civil Litigation: Reevaluating Rule 26 for the Digital Age*, 63 RUTGERS L. REV. at 529 (discussing the "staggering costs" in discovery because of the volumes of electronically stored information in computers and other databases around the country); Wright, Note, *Federal Rule of Civil Procedure 37(e): Spoiling the Spoliation Doctrine*, 38 HOFSTRA L. REV. 793, 806 (2009) (discussing the discovery problems when electronically stored information is routinely deleted from a business's computers, and the need for courts to remedy spoliation while also remembering that "[i]n a world where the very act of deletion is integral to normal operations, it is unfair to treat the inadvertent or negligent loss of [ESI] as indicative of an intent to destroy evidence and to thereby infer spoliation") (citation and internal quotation marks omitted).

breach of its duty to reasonably preserve evidence irreparably prevents the nonspoliating party from having any meaningful opportunity to present a claim or defense. *See Wal-Mart Stores*, 106 S.W.3d at 721 (recognizing that "the loss or destruction of evidence may seriously impair a party's ability to present its case"). In such circumstances, the destruction or loss of the evidence, regardless of motive, could completely subvert the factfinder's ability to ascertain the truth.

The United States Court of Appeals for the Fourth Circuit has explained in detail the rationale for occasionally imposing a severe sanction—in that case, dismissal—when evidence is negligently destroyed. In *Silvestri v. General Motors Corp.*, evidence spoliation deprived General Motors of the only available evidence from which it could develop its defenses. 271 F.3d 583, 594 (4th Cir. 2001).[18] The court recognized that, although negligence is generally an insufficient level of culpability to warrant a severe spoliation sanction like an instruction, such a remedy may nevertheless be justified if the prejudice to a party is "extraordinary, denying it the ability to adequately defend its case." *Id.* at 593.

Similarly, we do not believe a spoliation instruction would be excessive if the act of spoliation, although merely negligent, so prejudices the nonspoliating party that it is irreparably deprived of having any meaningful ability to present a claim or defense. *See id.* We therefore conclude that, in this rare circumstance, a court should have the discretion to remedy such extreme

---

[18] In *Silvestri*, the plaintiff sued General Motors following a motor vehicle accident, alleging the air bag in the car he was driving had failed to deploy. 271 F.3d at 586. In anticipation of filing suit, the plaintiff's attorney hired experts to inspect the car and the crash site, but failed to notify General Motors of the accident for three years, by which time the car had been sold and repaired. *Id.* at 587.

23

and irreparable prejudice to the nonspoliating party with a spoliation instruction, even if the trial court determines that the evidence was only negligently lost or destroyed.

## D. Admission of Spoliation Evidence at Trial

An issue that commonly arises when a party is accused of spoliation is the admissibility of evidence at trial relating to whether spoliation occurred and the culpability of the spoliating party. Under the Texas Rules of Evidence, admissible evidence must be relevant, which is defined as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Further, a trial court may exclude even relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. The evidentiary issue presented here is whether evidence bearing solely on whether a party spoliated evidence or the party's degree of culpability in doing so relates to a "fact that is of consequence to the determination of the action." For the reasons set out below, we hold that it does not.

Our holding that the trial court, not the jury, bears responsibility for making the required spoliation findings and imposing a remedy affects the propriety of admitting evidence regarding spoliation at trial. Again, when a party requests spoliation sanctions, the trial court decides whether the accused party owed and breached a duty to preserve relevant evidence, assesses the culpability level of the spoliator, evaluates the prejudice suffered by the nonspoliating party, and imposes a remedy. The evidence considered by the trial court in making these findings, however, often has no bearing on the facts that are "of consequence to the determination of the action" from the jury's

24

perspective. TEX. R. EVID. 401. This lack of relevance is reinforced by our longstanding refusal to recognize spoliation as an independent cause of action. *Trevino*, 969 S.W.2d at 952. Further, the tendency of such evidence to skew the focus of the trial from the merits to the conduct of the spoliating party raises a significant risk of both prejudice and confusion of the issues.

That said, we recognize that all references to missing evidence, whether lost due to a party's spoliation or missing for some other reason, cannot and should not be foreclosed. For example, to the extent permitted by the Texas Rules of Evidence, parties may present indirect evidence to attempt to prove the contents of missing evidence that is otherwise relevant to a claim or defense, such as a person's testimony about the content of a missing document, photo, or recording. *See* TEX. R. EVID. 1002 (noting the general rule that an original writing, recording, or photograph is required to prove the content thereof); *see also, e.g.,* TEX. R. EVID. 1004(a) (noting an exception to the general rule when the originals are lost or destroyed, "unless the proponent lost or destroyed them in bad faith"). However, there is no basis on which to allow the jury to hear evidence that is unrelated to the merits of the case, but serves only to highlight the spoliating party's breach and culpability. While such evidence may be central to the trial court's spoliation findings, it has no bearing on the issues to be resolved by the jury.

### III. Application

We review a trial court's imposition of a spoliation remedy, including the submission of a spoliation instruction to the jury, for an abuse of discretion. *Wal-Mart Stores*, 106 S.W.3d at 723; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (trial court's factual findings reviewed for abuse of discretion). We similarly evaluate the court's admission of evidence under an abuse-of-

25

discretion standard. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). The trial court in this case admitted evidence at trial regarding Brookshire Brothers' alleged spoliation of video footage and, as noted above, submitted the spoliation issue to the jury in the following instruction:

> In this case, Brookshire Brothers permitted its video surveillance system to record over certain portions of the store surveillance video of the day of the occurrence in question. If you find that Brookshire Brothers knew or reasonably should have known that such portions of the store video not preserved contained relevant evidence to the issues in this case, and its non-preservation has not been satisfactorily explained, then you are instructed that you may consider such evidence would have been unfavorable to Brookshire Brothers.

Under the analysis set forth herein, both the admission of such evidence and the submission of the instruction were improper.

Further, based on our review of the considerable amount of record evidence surrounding the spoliation issue, we hold that the submission of a spoliation instruction in any form was an abuse of discretion. Assuming without deciding that Brookshire Brothers had and breached a duty to reasonably preserve evidence by saving an insufficient amount of video footage before allowing the additional footage to be erased, prejudicing Aldridge, there is no evidence that it did so with the requisite intent to conceal or destroy relevant evidence or that Aldridge was irreparably deprived of any meaningful ability to present his claim.

Shortly after Aldridge reported his fall, Gilmer instructed an assistant manager to review video footage from the day of the fall and to preserve any footage showing the fall as well as several minutes before the fall. As a result, Brookshire Brothers saved footage that showed Aldridge entering the store and continued until approximately one minute after he fell. Gilmer testified that, when he made the decision regarding the amount of footage to save, he did not believe any additional

26

footage would be relevant and did not anticipate a lawsuit. A few days after the incident, Aldridge requested video footage of "the fall," which had already been preserved, but did not request any other footage. Although Aldridge's attorney requested additional footage almost a year later, there is no evidence that such a request was made when that footage was still available.[19]

Tyler, the employee who copied the video, testified that he began watching the footage at the 5:00 p.m. time stamp, which corresponded with the approximate time of the incident,[20] and "played it from there." There is no evidence that a Brookshire Brothers employee viewed any additional footage from that day other than the eight preserved minutes. In turn, there is no indication that the decision regarding the amount of footage to save was based in any way on what the additional footage would have shown. Had Brookshire Brothers allowed *all* footage of the incident to be destroyed, the outcome might be different. But there is simply no evidence that Brookshire Brothers saved the amount of footage that it did in a purposeful effort to conceal relevant evidence. To the contrary, it is undisputed that Brookshire Brothers preserved exactly what it was asked to preserve—footage of the fall.[21]

---

[19] We are in no way suggesting that parties may immunize themselves from the consequences of evidence spoliation by hiding behind unreasonable limited-duration retention policies. Our opinion today does not address the reasonableness of Brookshire Brothers' policy, which is not challenged. Rather, we review whether the amount of video footage Brookshire Brothers chose to preserve was sufficient.

[20] The preserved video starts at 5:01 p.m. and ends at just before 5:09 p.m. It shows that Aldridge entered the store at about 5:02 p.m. and fell just before 5:08 p.m.

[21] The dissent speculates about what the deleted video would have shown in concluding that Brookshire Brothers engaged in willful blindness. Minimizing the fact that the area of the fall was obscured by a table covered with a cloth that extended to the floor and the fact that the low quality of the video makes details very difficult to discern, the dissent would improperly assume, based on speculation rather than evidence, that Brookshire Brothers knew what the video would or even could have shown, particularly with respect to how long the substance was on the floor before Aldridge slipped and fell.

27

Further, any prejudice to Aldridge resulting from Brookshire Brothers' failure to preserve additional video footage did not rise to the rare level required to justify an instruction in the absence of intentional spoliation. This narrow exception to the intent requirement is meant to address situations akin to those presented in *Silvestri*, in which the only available evidence from which General Motors could develop its defenses—the car in which an air bag allegedly failed to deploy—was irreparably altered before General Motors even had a chance to examine it. *See Silvestri*, 271 F.3d at 594. By contrast, in this case, even without the missing video footage, other evidence was available to Aldridge to prove the elements of his slip-and-fall claim.

Again, the portion of the video showing the fall, several minutes before the fall, and one minute after the fall was preserved and shown to the jury at trial. The video showed the activity around the area of the fall, including the actions of various store employees, during this period of time. Aldridge also presented Brookshire Brothers' incident report confirming its conclusion that Aldridge had slipped in grease that leaked out of a container by the Grab-N-Go, which was located near the area of the fall. Finally, Aldridge himself testified at length about the circumstances surrounding his fall. Based on all the available evidence, we hold that Brookshire Brothers' failure to preserve additional video footage did not irreparably deprive Aldridge of any meaningful ability to present his claim.

We therefore hold that the trial court abused its discretion in submitting a spoliation instruction. Further, the trial court erred in admitting evidence of the circumstances surrounding the failure to preserve additional video footage, though only to the extent such evidence was unrelated to the merits and served principally to highlight Brookshire Brothers' culpability. For example,

28

nonspeculative testimony relating to what the missing video would have shown, such as the testimony about the cleanup, was not problematic. Further, because a portion of the video was preserved and presented at trial, some degree of questioning about the creation of the video was reasonably pursued as background for its introduction to the jury. However, testimony that is relevant only to the issues of whether Brookshire Brothers breached a duty to preserve evidence or acted with the requisite intent was improperly admitted.

The trial court's error is reversible, however, only if it "probably caused the rendition of an improper judgment." TEX. R. APP. P. 61.1(a); *see also Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) (in determining whether erroneous admission of evidence is harmful, "[w]e review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted"). In *Wal-Mart Stores*, we noted that "if a spoliation instruction should not have been given, the likelihood of harm from the erroneous instruction is substantial, particularly when the case is closely contested." 106 S.W.3d at 724. Such a likelihood of harm existed in this case.

The instruction capped off a trial in which both liability and the extent of Aldridge's damages were closely contested and in which significant emphasis was placed on the spoliation issue. In opening and closing arguments, Aldridge's attorney accused Brookshire Brothers of destroying the tape, hiding evidence, and acting deceptively. Gilmer was questioned extensively about his motivation in preserving part of the video. The presentation of the spoliation issue to the jury also led the trial court to admit evidence regarding Brookshire Brothers' payment of a portion of Aldridge's medical expenses, even though such evidence was otherwise inadmissible. TEX. R. EVID.

29

409. Further, the preserved video footage suggests the highly speculative nature of a presumption that additional footage would have been harmful to Brookshire Brothers. The video is of poor quality, and the area of the fall is far from the camera and was obscured by a table covered with a cloth that extended to the floor. On this record, particularly when considered in conjunction with our holding in *Wal-Mart Stores* that an improper spoliation instruction presents a substantial likelihood of harm, it is "very difficult to overlook the likely impact" of the spoliation evidence and the instruction. *Kia Motors Corp. v. Ruiz*, ___ S.W.3d ___, ___ (Tex. 2014). Accordingly, we hold that the trial court's error probably caused the rendition of an improper judgment, and we reverse the judgment of the court of appeals.

We note that this case highlights the need for guidelines and clarity in our spoliation jurisprudence, as the record reflects the significant effect that the spoliation allegations had on the course of this trial. Indeed, this case typifies the manner in which the focus of the trial can impermissibly shift from the merits of the case to the spoliating conduct when such guidance is missing. Because spoliation is not directly addressed in either our rules of evidence or our rules of procedure, courts must fill in the gaps to maintain the consistency and predictability that is basic to the rule of law in our society. The continued development of the State's common law, in which we engage today, is not only the province—but the responsibility—of this Court.

## IV. Legal Sufficiency Challenge

Finally, we address Brookshire Brothers' assertion that it is entitled to rendition of judgment in its favor on legal sufficiency grounds. Brookshire Brothers argues that, regardless of whether the spoliation instruction is taken into account, the evidence is legally insufficient to support the

constructive notice element of Aldridge's claim. One of the grounds on which we will uphold a legal sufficiency challenge is if "'the evidence offered to prove a vital fact is no more than a scintilla.'" *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Id.* (citation and quotation marks omitted). In reviewing evidence in the context of a legal sufficiency challenge, "we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so." *Id.*

As is relevant here, to show Brookshire Brothers had constructive notice of the "condition" (*i.e.*, a slippery substance on the floor), Aldridge had to prove that "it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Reece*, 81 S.W.3d at 814. Temporal evidence is the best indicator of whether the owner could have discovered and remedied the condition. *Id.* at 816.

As noted above, the exact area of the floor where Aldridge fell was obscured by a table in the video footage that was preserved, but the video does not appear to show a spill or leak occurring during the seven minutes before the fall. Tyler testified that substances reasonably should not remain on the floor of the store for longer than five minutes without being noticed and cleaned up. The video showed store employees walking past the area approximately three minutes and five minutes before Aldridge fell. It also showed an employee signaling for help to clean up the spill right before the video ended, suggesting the spill was too large to be cleaned by paper towels. This evidence,

31

even without the spoliation instruction, amounts to more than a scintilla favoring a finding that Brookshire Brothers had constructive notice of the condition.[22]

## V. Conclusion

We hold that the trial court abused its discretion in submitting a spoliation instruction because there is no evidence that Brookshire Brothers intentionally concealed or destroyed the video in question or that Aldridge was deprived of any meaningful ability to present his claim to the jury at trial. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for a new trial in accordance with this opinion.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** July 3, 2014

---

[22] As we noted recently in *Kia Motors Corp.*, our review of the evidence in evaluating a legal sufficiency challenge is much narrower than our review in determining whether the trial court's error probably caused the rendition of an improper judgment. ___ S.W.3d at ___. Our holding that the evidence is legally sufficient to support the verdict is thus fully consistent with our determination that the trial court's spoliation errors were harmful.

# IN THE SUPREME COURT OF TEXAS

No. 10-0846

BROOKSHIRE BROTHERS, LTD., PETITIONER,

v.

JERRY ALDRIDGE, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

## JUDGMENT

THE SUPREME COURT OF TEXAS, having heard this cause on petition for review from the Court of Appeals for the Twelfth District, and having considered the appellate record, briefs, and counsel's argument, concludes that the court of appeals' judgment should be reversed.

IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that:

1) The court of appeals' judgment is reversed;

2) The cause is remanded to the trial court for further proceedings consistent with this Court's opinion; and

3) Brookshire Brothers, Ltd. shall recover, and Jerry Aldridge shall pay, the costs incurred in this Court and in the court of appeals.

Copies of this Court's judgment and opinion are certified to the Court of Appeals for the Twelfth District and to the District Court of Angelina County, Texas, for observance.

Opinion of the Court delivered by Justice Lehrmann, joined by Chief Justice Hecht, Justice Green, Justice Johnson, Justice Willett, and Justice Boyd

A dissenting opinion delivered by Justice Guzman, joined by Justice Devine and Justice Brown

July 3, 2014

**********