

**IN THE**
**TENTH COURT OF APPEALS**

_____

**No. 10-16-00420-CV**

**IN RE XTERRA CONSTRUCTION, LLC, VENTURI CAPITAL, INC.**
**D/B/A ARTISAN CABINETS AND KEITH D. RICHBOURG**

_____

**Original Proceeding**

_____

**DISSENTING OPINION**

_____

This is a case on spoliation. There is much that I could write to explain the extent of my dissent with the Court's opinion and judgment in this proceeding. I could discuss a plethora of cases and recount details of the evidence about how the evidence was lost including the phenomenal sweeping prowess of Cedric. In the interest of time, however, I will be brief (unlike the three days of hearing and argument on the issue in the trial court).

The law on spoliation is _Brookshire Bros. See Brookshire Bros., Ltd. v. Aldridge_, 438 S.W.3d 9 (Tex. 2014). It will serve no useful purpose for me to repeat it, or attempt to expand upon it, or explicate the nuances of its application to these facts. The facts in the

case at hand, summarized, are that there was a fire in a warehouse owned by Hull. The warehouse was rented to Xterra. Xterra had insurance on the contents. Hull was contractually obligated to have insurance on the warehouse, but did not. The point of origin of the fire was altered and the suspected/probable cause of the fire was lost.

The origin of the fire, meaning where within the warehouse the fire started, is not seriously disputed. The cause of the fire, the source of ignition, is disputed. The focus of the resulting investigation, and now litigation, was on a fan manufactured by Emerson which was purchased and owned by Xterra. The fan had been housed in a mobile cabinet built by Xterra. The fan was used in the finishing room where Xterra finished custom made cabinets by staining/painting/sealing them to the specifications of its customers.

**DUTY TO PRESERVE EVIDENCE—the Preservation Duty**

Xterra made a claim under its fire policy two days after the fire. Roughly three days later, an expert hired by Xterra's insurer formed a preliminary opinion that the cause of the fire was a fan, specifically its motor, which was later determined to be manufactured by Emerson. From that day forward, a reasonable person would have anticipated a claim to be made against Emerson. The duty to preserve was thus born no later than October 23, 2014, five days after the fire.

The Court's opinion turns on the date it determined the duty to preserve evidence arose. The Court determines that the duty to preserve arose on the date Xterra could reasonably anticipate a claim against it by Hull. I believe the Court errs by focusing on determining when anticipation of a specific claim arose thus triggering the preservation duty. *Brookshire Bros.* does not speak directly to this issue. But I believe the issue must

be understood in its broader context. It is not as narrowly limited as the date a specific claim could be reasonably anticipated but rather the date *any* claim could reasonably be anticipated.[1] And the preservation duty is not dependent on who might benefit from the evidence or who the claim may be made by or against.

The Court has determined that Xterra could not have anticipated a claim against it by Hull until November 10, 2014. This date is well after the scene had been altered and the fan motor lost. I strongly disagree that this is the appropriate date. I agree with the trial court's implicit determination that the evidence from the hearing supports a much earlier date to anticipate a claim which triggered the preservation duty.

**SANCTION FOR BREACH OF PRESERVATION DUTY—Spoliation of Evidence**

On or before November 6, 2014, a pathway was swept through the point of origin of the fire. On or before November 6, 2014, the fan motor, the theorized cause of the fire, disappeared from the warehouse and has never been located.

Hull moved for discovery sanctions for spoliation of evidence. There was more than two days of testimony in this hearing. The testimony was about the events at the warehouse from the time of the fire through the date the pathway was swept and the motor disappeared. The trial court sanctioned Xterra. The sanctions were to strike Xterra's defense on the causation element of Hull's suit and also strike Xterra's designation of Emerson as a responsible third party in defense of Hull's suit. The trial

---

[1] This is a different analysis than anticipation of litigation for the birth of the work-product privilege, but it is closely related. Recognizing the risk of confusion, the plaintiff argued, "So this idea that somehow they didn't know that there was an anticipation of litigation, I hope that we don't get caught up on that." Well, as you now know, you got caught up on that.

court also indicated that it would give an instruction on spoliation to the jury and awarded attorney fees and cost for the hearing against Xterra to Hull and Emerson.

Because the Court concludes there was no duty to preserve the evidence, the Court does not reach the question of whether these sanctions were excessive. Because I would hold there was a duty to preserve the evidence and that the duty was breached I would, if I were writing for a majority, reach that issue. As a dissent, however, it is unnecessary for me to address the issue fully; but I provide the following comment regarding the extent of the sanctions. I believe they are excessive and fail to evaluate other alternatives that would place the parties in a position as nearly as possible to where they would have been if the evidence was available.

As to the point of origin of the fire, there seems to be little dispute, and possibly unanimous agreement. If not, the testimony was clear that the sweeping of the point of origin can be overcome by the extensive photographs which were taken of the scene, taken by numerous persons, and taken on different dates before the scene was altered by sweeping. As to whether the fan motor was the cause of the fire, I think review of the issue is premature.[2] There was no evidence that the parties have explored whether a second identical fan, located in an identical cabinet, used for the same purpose, in the

---

[2] Most of the reported spoliation cases seem to be after a trial on the merits and the spoliation instruction, as given, can be evaluated in the context of a fully developed record. In this case the purported sanction is, at this juncture, theoretical, because the trial court could re-determine or modify its sanction order at any time before judgment. For example, the entire trial could be conducted without limitation by any sanction, and based on the evidence as it comes in and the jury's answers, the trial court may then decide that Emerson's liability, if any, should be shouldered by Xterra due to Xterra's loss of the motor and Emerson's handicap in defending that a defect in the motor was the cause of the fire. I do not mean to imply that I would order such; I merely suggest review now is premature.

same room, and even purchased at the same time, could yield information on whether it was defective and whether the defect, if any, could be extrapolated to have been present in the missing fan motor, or whether there have been other reported failures of the same type fan motors manufactured by Emerson. There seems to have been a premature leap to extricate Emerson from the cause of the fire. Additionally, without the motor, Xterra seems to be the most adversely affected by its inability to show the cause of the fire so there is a natural adverse consequence to Xterra, separate and apart from any sanctions imposed by the trial court.[3] Moreover, if causation based on the fan is stricken as an element from Hull's suit against Xterra, I cannot see why a spoliation instruction does anything other than inflame the jury. Of course, these observations are based on the introduction of evidence that has not occurred because the trial has not occurred and the charge has not been prepared, objected to, or argued. We obviously do not know the state of the evidence, and thus, I believe that announcing a spoliation instruction will be given is not a proper issue for this mandamus proceeding.

**CONCLUSION**

For the forgoing reasons, and with the additional comments made herein, I respectfully dissent from granting the relief requested in this mandamus proceeding and would address the issues that may result after a trial on the merits when we can properly

---

[3] For example another possible sanction would be to prevent Xterra from using the only cause and origin expert that had the opportunity to analyze the fire scene before it was altered and the motor lost. This would put all the parties on an equal footing as to the available evidence to prove/negate causation as being a defect in the motor, and the party that breached the duty to preserve the evidence will be the one most prejudiced in its defense by its inability to prove its theory of causation.

determine the impact of the sanctions on the trial of the case and the submission of the issues to the jury in the context of a properly, and fully, developed record.

TOM GRAY
Chief Justice

Dissenting opinion issued and filed May 15, 2019

