**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00384-CV**
_____

**IN RE NORTH HOUSTON POLE LINE, L.P. AND RYAN JAMES NOLAN**

**Original Proceeding**
**58th District Court of Jefferson County, Texas**
**Trial Cause No. A-202961**

**MEMORANDUM OPINION**

North Houston Pole Line, L.P. ("NHPL") and Ryan James Nolan, Relators, seek mandamus relief. They argue the trial court clearly abused its discretion by excluding certain evidence as a discovery sanction and in denying their request for an inspection and re-download of data stored in an event data recorder in one of the vehicles involved in the automobile accident that is the subject of this personal injury lawsuit. We conditionally grant mandamus relief because we conclude that the trial court erred and Relators lack an adequate remedy by appeal.

1

The real party in interest, Megan Amber Martinez, sued Relators for injuries she sustained in an automobile accident. Martinez was driving a 2010 Ford Edge at the time of the accident. The Ford Edge was owned by Martinez's mother, Leah Ray Dawson. Relator NHPL's employee, James Nolan, was driving a freightliner at the time of the accident. Martinez alleges that Nolan was driving in the course and scope of his employment with NHPL, and that the negligence of Nolan and NHPL proximately caused the accident.

It is undisputed that on January 15, 2019, Relators had one of their experts (Nicholas Schlechte) obtain data from the event data recorder in the Ford Edge while the vehicle was in storage. According to the Relators, the event recorder data from the Ford Edge shows that Martinez "was going 93 mph approximately four seconds prior to impact." Relators did not seek permission or consent from the registered owner of the vehicle before having their expert download or access the data. Relators also did not disclose the data extraction to Martinez until April 10, 2019, when Relators supplemented discovery with a copy of Schlechte's report. This supplementation occurred about a week before Martinez's deposition and after Relators had deposed an eyewitness to the accident. The eyewitness stated in his deposition that he believed Martinez "was traveling at a normal speed[]." Relators asked several questions of the eyewitness in his deposition about whether his opinion

2

about the accident would change if the evidence showed Martinez was speeding at the time of the accident.

Martinez moved to exclude the evidence and testimony as a discovery sanction. Martinez argued that Schlechte, Relators' expert, illegally downloaded data from the Ford Edge's event data recorder without first obtaining Dawson's consent or a court order and without Martinez's knowledge. In Martinez's motion for sanctions, she complained that Relators had violated state law on the retrieval of the data from the event data recorder. *See* Tex. Transp. Code Ann. § 547.615(c). Martinez also referenced the federal "Driver Privacy Act of 2015"[1] and Texas Rule of Civil Procedure 196.7(d). Relators filed a response to Martinez's motion. The trial court held a hearing on the motion for sanctions on August 8, 2019.

In support of her motion for sanctions, Martinez attached an affidavit from her expert, April Yergin, that discussed possible spoliation concerns with improperly downloaded data but stated that it was impossible to determine with any reasonable degree of engineering certainty whether the data had been downloaded "correctly and appropriately[.]" Relators countered with affidavits from Schlechte and W.R. "Rusty" Haight, an accident reconstructionist. In Schlechte's affidavit, Schlechte

---

[1] At the hearing Martinez referenced the "Federal Law Driver Privacy Act of 2015[.]" *See* Pub. L. No-114-94, § 24302 (2015).

described his experience and the procedure he used to access the data. In Haight's affidavit, Haight stated his opinion that Schlechte followed the proper procedures and further that the hypothetical concerns described in Yergin's affidavit would be dispelled by reviewing the downloaded information. According to Haight, another download would establish whether the veracity of the information had been permanently destroyed.

Relators' attorney stated that the unauthorized download had been performed on a good-faith belief that Relators' insurer owned the vehicle and had consented to the inspection. Relators argued that excluding all data from the event data recorder would prevent the Relators from presenting their defense. The trial court sanctioned Relators by striking the expert (Schlechte) and the expert's report as a discovery sanction.

Relators also sought a court order compelling an inspection and for a "re-download" of the data, and the trial court held another hearing on September 24, 2019. In the September 24th hearing, the trial court denied the Relators' request for an inspection and re-download of the data and stated that the trial court was "striking anything related to" the black box or event data recorder because the Relators had "illegally" downloaded the data and used it during the depositions.

4

The Texas Rules of Civil Procedure authorize trial courts to impose sanctions for discovery abuses. Tex. R. Civ. P. 215.3. A trial court abuses its discretion by imposing a sanction that is not just. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). Two measures determine whether an imposition of sanctions is just. *Id.* "First, a direct relationship must exist between the offensive conduct and the sanction imposed." *Id.* A sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party and against the offender. *Id.* "Second, just sanctions must not be excessive. The punishment should fit the crime." *Id.* A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *Id.* The legitimate purposes of discovery sanctions are to secure compliance with the discovery rules, deter other litigants from abusing the discovery rules, and punish parties who violate the discovery rules. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 384 (Tex. App.—Dallas 2009, pet. denied). Generally, courts should first consider the availability of less stringent sanctions. *Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004); *Hamill v. Level*, 917 S.W.2d 15, 16 n.1 (Tex. 1996); *Chrysler Corp.*, 841 S.W.2d at 849; *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917.

Relators argued Martinez can have her own experts obtain the same data and that they did not destroy any data because the data still remains in the event data recorder. Martinez argues the trial court acted within its discretion because Relators' counsel acted in bad faith and used illegally obtained information to contradict the testimony of the eyewitness. Martinez also argues that Relators corrupted the integrity of the process in that Martinez cannot know whether the data was intentionally hacked or altered because she was not present for the original download.

The trial court could have disbelieved counsel's explanation of why Relators' counsel believed he did not need to secure the owner's consent or a court order, but the trial court should have imposed a sanction upon only the offender (the attorney) and should have considered and explained that it considered lesser sanctions before imposing sanctions that severely preclude a party's ability to present the merits of its claims. *See Primo v. Rothenberg*, No. 14-13-00794-CV & 14-13-00997-CV, 2015 WL 3799763, at *24 (Tex. App.—Houston [14th Dist.] June 18, 2015, pet. denied) (mem. op.). "[A] trial court either must impose lesser sanctions first or must clearly explain on the record why the case is an exceptional case where it is fully apparent that no lesser sanctions could promote compliance." *Knoderer v. State*

*Farm Lloyds*, No. 06-13-00027-CV, 2014 WL 4699136, at *11 (Tex. App.— Texarkana Sept. 19, 2014, no pet.) (mem. op.).

While we cannot say it would have been an abuse of discretion for the trial court to strike portions of Schlechte's report or possibly even all of the report—to the extent it is based on the unauthorized downloaded data—or for the trial court to have disallowed the offending party's use of the improperly downloaded data,[2] the trial court's ruling did much more than that because the trial court struck the report, the expert witness, and "anything related to" the event data recorder, and then the trial court also denied any further inspection or re-download of the data. The trial court did not consider or explain why a lesser sanction would not accomplish the same goal, nor is it apparent from the record that the trial court directed the sanction against the specific offender. Therefore, we conclude that the trial court erred. *See TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917.

Martinez argues the harsher sanctions are justified because the original extraction was insufficiently documented to exclude any possibility of tampering. She suggests the initial download may have constituted a destructive inspection tantamount to spoliation. A party's intentional destruction of evidence may, absent

---

[2] Nothing in the record before us indicates that the time for designating experts has passed, nor do the parties address this issue.

evidence to the contrary, be enough by itself to support a finding that the spoliated evidence is both relevant and harmful to the non-spoliating party, but negligent spoliation could not be enough to support such a finding without some proof about what the destroyed evidence would show. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 22 (Tex. 2014). A finding of bad-faith spoliation requires evidence that the party acted with the subjective purpose of concealing or destroying discoverable evidence. *Id.* at 24.

Martinez's expert opined that possible scenarios exist in which data on an event recorder can be corrupted, but Martinez did not present evidence that any of the possible scenarios occurred nor evidence that the download was conducted with the subjective purpose of concealing or destroying discoverable evidence. Both would be required before punishment for destroying evidence would be just or proportionate. *Id.* Evidence that would be sufficient to support a finding that Relators' counsel intentionally had the Relators' expert conduct an unauthorized download is insufficient to support a harsher sanction for intentional spoliation absent evidence that the purpose for conducting the download without consent or without a court order was to conceal or destroy the data. Such a finding is not reasonably inferable from the mandamus record presented here.

8

We find that the trial court abused its discretion when it imposed a sanction striking Schlechte's Report, Relators' expert (Schlechte), and "anything related to" the event data recorder, and in denying the request for further inspection and re-download of the data. To obtain mandamus relief, Relators must also show that they have no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). Martinez argues Relators have an adequate remedy by appeal because they will be able to present a defense using eyewitness testimony or they can make a bill in the trial court and preserve the issue for appeal.

An appeal is an inadequate remedy if "a party's ability to present a viable claim or defense at trial is either completely vitiated or severely compromised." *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding). In *Garza*, mandamus relief was an appropriate remedy for a discovery sanction that was less than a case-determinative "death penalty" because the trial court's ruling severely compromised the relator's ability to present their case. *See id*. at 843. The record before us establishes that Relators' ability to present a defense will be severely compromised. We conclude that appeal is not an adequate remedy.

We lift the stay imposed by our order of November 4, 2019, and we conditionally grant Relators' mandamus petition. We are confident that the trial

court will vacate its orders. The writ shall issue only if the trial court fails to act in accordance with this Court's opinion.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on November 21, 2019
Opinion Delivered January 9, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.