

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 25S-CT-217



FILED

Mar 11 2026, 11:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## Caryl Rosen,
*Appellant/Plaintiff,*

–v–

## Community Healthcare System
## d/b/a Community Hospital,
*Appellee/Defendant.*

---

Argued: November 5, 2025 | Decided: March 11, 2026

Appeal from the Lake Superior Court
No. 45D10-2102-CT-122
The Honorable Rehana R. Adat-Lopez, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-CT-1463

---

**Opinion by Justice Molter**

Chief Justice Rush and Justices Massa and Slaughter concur.
Justice Goff dissents with separate opinion.

**Molter, Justice.**

Caryl Rosen sued Community Hospital alleging that its disheveled entryway mat caused her to trip and fall as she was leaving through the hospital's main entrance doors. A jury decided the hospital wasn't liable, but Rosen believes her trial was unfair, so she appealed.

Her appeal focuses on the hospital's failure to preserve video footage she thinks might have helped prove her case. That is, she claims the hospital spoliated evidence. The hospital's security supervisor swore in an affidavit that only one camera captured Rosen's fall, so he preserved a couple minutes of that video, from the moment she entered the frame until she got up and left. He also swore there were two other cameras in the area, but they didn't capture the fall, so he didn't save that footage. Rosen argues that not saving more video from the camera that captured the fall and not saving any video from the other two cameras was evidence spoliation. The trial court credited the hospital's evidence that none of the unpreserved footage captured her fall. But Rosen argues the footage from the surrounding area still might have shown the mat was disheveled before she fell or led to the discovery of other evidence about the mat's condition.

After considering Rosen's and the hospital's versions of events, the trial judge disagreed, concluding the hospital didn't spoliate evidence. Rosen argues that conclusion was an abuse of discretion. And that initial decision, she contends, led the judge to further abuse her discretion by: (1) denying Rosen's request to instruct the jury that it could infer from the hospital's failure to save more video that the additional footage would have been unfavorable to the hospital; and (2) sustaining the hospital's objections to evidence that the hospital didn't preserve more video. Because we conclude these were reasonable judgment calls within the trial judge's discretion, we affirm.

## Facts and Procedural History

While Caryl Rosen's husband was being discharged from Community Hospital in Munster, she walked ahead to retrieve her car so she could

pick him up near the hospital's main entrance. Just inside the main entrance was a large, commercial grade floormat that Rosen tripped over as she approached the door. She says her "right foot got stuck under that rug," and because her "momentum was still going forward and [she] couldn't stop [herself]," she fell, and "[her] face smashed into the ground." Tr. Vol. 2 at 235. Before she fell, she didn't notice "any part of the rug or mat to be lifted," nor did she see any other defect in the mat. Tr. Vol. 3 at 20. But when she sat up after falling, she says she "could see the rug that was pulled up and where [her] foot had gotten stuck and what had trapped [her] foot." Tr. Vol. 2 at 237.

The fall left her "pretty shaken" and "disoriented," and a few people nearby quickly helped her up and comforted her. *Id.* at 236. One of those people was Angela Smith, a security officer who had worked for the hospital for nearly a decade. Smith suggested that Rosen get checked out in the emergency room, but Rosen declined and drove her husband home instead. Shortly after Rosen left, Smith prepared an incident report noting that when she "arrived the visitor said her foot got caught in the carpet and she fell," and Rosen "had a cut that was bleeding on her nose, chin, and fingers, but she declined treatment." Ex. 7 at 23.

The next day, Security Supervisor Timothy Panek reviewed Smith's incident report and all the security footage from the area. Panek has worked for the hospital since 1992, and he became the security supervisor in 2011. His responsibilities require him to "routinely review and preserve security camera footage related to incident reports." Appellant's App. Vol. 3 at 8, ¶¶ 5, 6.

The hospital's security video system has limited memory, so new footage automatically records over old footage after about forty-five days. Whenever an individual falls, it is Panek's "custom and practice to review the security cameras in the area near the fall and preserve any and all footage which shows the fall and aftermath," ensuring that footage does not get recorded over. *Id.* ¶ 7. When he preserves that footage, he "start[s] with the point at which the person involved enters the screen and stop[s] with the point at which the incident is concluded and/or the person leaves the screen." *Id.* ¶ 9.

There were three cameras in the area where Rosen fell, and Panek "reviewed and preserved all video footage which showed the fall." *Id.* ¶¶ 13, 14. That included reviewing "all cameras recording in the main entrance lobby area" and saving "any video footage which showed any aspect of the fall." *Id.* After "reviewing video from all three cameras," he "determined that only the video from the camera near the security desk facing towards the main entrance doors captured the fall," and "[t]he video recorded by the other two cameras did not show the fall or any part thereof." *Id.* ¶ 16.

Based on his "custom and practice," he "began preserving video from the point at which Ms. Rosen entered the screen," and he "stopped preserving video at the point at which she stood up and walked out of the hospital." *Id.* ¶ 17. The video shows the main lobby area with the entrance visible in the distance, approximately seventy-five feet from the camera. The video also shows three other visitors walking over the same area of the mat without difficulty just seconds before Rosen, and none made any movement to avoid any part of the mat.

Six days after the fall, Rosen's attorney sent the hospital a letter requesting that it preserve "video and/or photos which show my client being injured" and provide "copies of any and all incident reports which may have been completed by the hospital." Appellant's App. Vol. 2 at 135. The hospital promptly provided the preserved video and the incident report, along with contact information and an invitation to request anything else Rosen's counsel needed. Rosen's counsel did not respond to that invitation.

About fifteen months later, Rosen filed suit against the hospital alleging it was "negligent and at fault in maintaining, operating, inspecting, and warning those on the premises so as to create an unsafe condition for [Rosen] and others similarly situated, and was otherwise negligent." Appellant's App. Vol. 2 at 23–24, ¶ 3. During discovery, she twice moved for spoliation sanctions, arguing the hospital should have preserved video from all three cameras. After a hearing, the trial court denied the motions through a written order finding that the hospital did not spoliate evidence. The court also later granted the hospital's motion in limine to

exclude any evidence or mention of spoliation at trial, concluding there was no basis for a spoliation claim.

At trial, Rosen proposed a jury instruction stating: "If a party fails to produce a document or physical evidence under the party's exclusive control, you may conclude that the documents or evidence would have been unfavorable to the party's case." Appellee's App. Vol. 2 at 141. Based on its pretrial ruling that the hospital did not spoliate evidence, the trial court refused the instruction, and the jury returned a verdict for the hospital.

The Court of Appeals reversed, holding that the trial court abused its discretion by finding the hospital did not spoliate evidence and by refusing Rosen's proposed spoliation instruction. *Rosen v. Cmty. Healthcare Sys.*, 257 N.E.3d 6, 17 (Ind. Ct. App. 2025), *trans. granted*, *opinion vacated*, 265 N.E.3d 1002 (Ind. 2025). The Court of Appeals reasoned that "the portion of the mat over which Rosen allegedly tripped is not visible at all on Preserved Video because it is blocked by a pixelated object that may be a wheelchair," and had the hospital "retained video footage from that camera before the wheelchair had been moved into its position, such footage may have shown the state of the mat, which would have been relevant to Rosen's claims." *Id.* at 14 (cleaned up). As for one of the cameras facing the lobby that Panek said did not capture the fall, the court explained that the hospital "did not provide any evidence from Panek or any other source indicating that the *state of the mat* over which Rosen allegedly tripped was not visible in that recording before or after the fall." *Id.* (emphasis in original).

The Court of Appeals agreed with the hospital and trial court on one point though. It held the trial court properly excluded evidence about the adequacy of the hospital's post-fall investigation. *Id.* at 17. The trial court reasoned that the adequacy of an investigation *after* the fall was irrelevant to whether the hospital had notice of any defect in the mat *before* the fall. And the trial court reasonably concluded that evidence to challenge the adequacy of the investigation "could confuse and mislead the jury into believing that Hospital had a duty to investigate," which both sides agreed the hospital did not. *Id.* at 16, 17.

We granted transfer, thus vacating the opinion of the Court of Appeals. Ind. Appellate Rule 58(A).[1]

## Standard of Review

We review each of the issues Rosen raises on appeal—spoliation, jury instructions, and evidentiary rulings—for an abuse of discretion. *See Abbas v. Neter-Nu*, 261 N.E.3d 233, 242 (Ind. 2025) (jury instructions and evidentiary rulings); *N. Ind. Pub. Serv. Co. v. Aqua Env't Container Corp.*, 102 N.E.3d 290, 301 (Ind. Ct. App. 2018) (spoliation). "A trial court exceeds its discretion when its decision is unlawful, illogical, or otherwise unreasonable." *Expert Pool Builders, LLC v. Vangundy*, 224 N.E.3d 309, 312 (Ind. 2024).

## Discussion and Decision

Rosen argues we should vacate the judgment for the hospital for two reasons. First, she claims the hospital spoliated evidence, and she was unfairly prejudiced by the trial court unreasonably declining to remedy the spoliation. Second, she claims the trial court erred by sustaining the hospital's objections to her introducing evidence that there was additional video footage that the hospital didn't preserve. The hospital responds that each of these rulings reflects a reasonable judgment call within the trial court's discretion. We agree with the hospital and analyze each issue in turn.

### I. The trial court did not abuse its discretion by concluding the hospital did not spoliate evidence.

Rosen first argues the trial court abused its discretion by concluding the hospital did not spoliate evidence and then, consequently, failing to

---

[1] In our Court, the Indiana Trial Lawyers Association submitted an insightful amicus brief in support of Rosen for which we are grateful.

remedy the claimed spoliation with an instruction to the jury that it could infer that the spoliated evidence would have been unfavorable to the hospital's defense.

"Spoliation" refers to destroying, materially altering, or concealing evidence that a party has a duty to preserve for pending or reasonably foreseeable litigation. *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000). The parties to pending or foreseeable litigation have a duty to preserve evidence in their control that they know, or reasonably should know, is discoverable. *See Miller v. Fed. Exp. Corp.*, 6 N.E.3d 1006, 1013 (Ind. Ct. App. 2014) (explaining the scope of the duty to preserve evidence). The party claiming spoliation must show "(1) there was a duty to preserve the evidence, and (2) the alleged spoliator either negligently or intentionally destroyed, mutilated, altered, or concealed the evidence." *Aqua Env't Container Corp.*, 102 N.E.3d at 301.[2]

For both elements, Rosen fails to demonstrate that it was unreasonable for the trial court to conclude that the hospital did not spoliate evidence.

---

[2] When deciding how to remedy spoliation, trial courts generally consider the spoliating party's culpability and the prejudice to the party seeking discovery. *Aqua Env't Container Corp.*, 102 N.E.3d at 301. And when a court concludes sanctions are appropriate, it should aim "to: (1) deter parties from engaging in spoliation; (2) place the risk of erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he or she would have been in absent the wrongful destruction of evidence by the opposing party." *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 189 (Ind. 2011) (quotations and brackets omitted). Our Court has not had occasion to decide whether mere negligence is enough to justify the sanction of an adverse inference instruction, or whether instead something more is required. That question is debated around the country, but the parties didn't brief it, and we don't need to answer it to resolve this appeal, so we leave it for another day. *See, e.g.*, Andrew S. Pollis, *Trying the Trial*, 84 Geo. Wash. L. Rev. 55, 103 (2016) ("The requisite level of mental culpability is the subject of intense debate among scholars and courts." (quotations omitted)); *compare Emerald Point, LLC v. Hawkins*, 808 S.E.2d 384, 392–93 (Va. 2017) ("[W]e hold that the evidence must support a finding of intentional loss or destruction of evidence in order to prevent its use in litigation before the court may permit the spoliation inference."), *with Bass-Davis v. Davis*, 134 P.3d 103, 105 (Nev. 2006) (holding that "a permissible inference that missing evidence would be adverse applies when evidence is negligently lost or destroyed" and that there is "a rebuttable presumption that the evidence would be adverse" "[w]hen evidence is willfully suppressed").

### A. The trial court could reasonably conclude the hospital had no duty to preserve additional video.

Rosen claims the hospital made two mistakes when deciding what video to preserve.

First, for the camera footage the hospital saved, Rosen contends the hospital should have saved a longer period. The hospital preserved the footage beginning when Rosen appeared on camera. But she argues earlier footage might have shown the mat was disheveled, which would have supported her testimony that a raised portion of the mat tripped her. And video showing a disheveled mat, she believes, also might have convinced the jury that the hospital should have noticed and smoothed the mat.

However, the video undercuts her argument. As Rosen describes in her appellant's brief, the video is "from over seventy-five (75) feet away and at an angle which was pixelated and did not even show the location of the fall." Appellant's Br. at 23. In other words, the camera was far enough away that as Rosen reached the mat, the video became so pixelated that it is difficult even to see her as she falls. Given how far away the mat is and how difficult it is to see, it was reasonable for the trial judge to conclude that earlier video would have been no more enlightening.

Disagreeing, the Court of Appeals noted there was an object, possibly a wheelchair, near where Rosen fell, and the court inferred that earlier footage without the wheelchair obstructing the view might have more clearly shown the condition of the mat. *Rosen*, 257 N.E.3d at 14. Perhaps, but the fact that the mat is so far away that we can't even determine what object is in front of it illustrates that it was not unreasonable—even if it was not inevitable—for the trial court to doubt that earlier footage would have been more helpful and to instead credit the security supervisor's sworn statement that he preserved all the video that shed any light on the fall.

Second, Rosen faults the hospital for not preserving footage from a camera "pointed directly at the incident location" and "within mere feet of the location." Appellant's Br. at 23. She claims that footage "would have clearly shown the fall, shown the defect in the mat, and shown how long

the defect was present." *Id.* at 24. As with her first claim, the video again undermines her argument that the trial court abused its discretion by reaching a different conclusion.

To support her claim, Rosen relies on a still-frame photo from that same camera years later. The photo shows only a corner of the large mat; the photo doesn't even show the entryway doors. The mat was also replaced at least every two weeks. So even though a corner of the mat on the ground years later was visible on camera, that doesn't mean the judge had to conclude that a different mat was in exactly the same position with the same corner visible on camera years earlier.

What's more, even if the mats were positioned in exactly the same spot and the camera captured exactly the same corner, that still doesn't mean the camera captured useful footage. Again, Panek swore he preserved all video capturing any part of Rosen's fall, and Rosen did not challenge the accuracy or truthfulness of his affidavit. If Rosen wasn't even visible on camera, then the trial judge could reasonably conclude, consistent with Panek's sworn statement, that the video did not capture the allegedly raised portion of the mat. After all, Rosen claims the raised portion of the mat was only the size of her foot. So if her foot wasn't on camera, then neither was the relevant portion of the mat. It was reasonable for the trial court to conclude none of the deleted footage was useful. It follows, then, the hospital couldn't reasonably know the footage was discoverable.

Our analysis here turns on the standard of review. We don't suggest the Court of Appeals' view of the evidence was unreasonable, and had the trial judge reached the same conclusion as the Court of Appeals, we might have affirmed that judgment too. But our appellate courts do not review spoliation decisions de novo. Instead, like other discovery and relevance questions, we review only for an abuse of discretion. So we cannot set

aside the jury's verdict based on our substitution of the trial judge's reasonable judgment call with a different judgment call of our own.[3]

## B. The trial court could reasonably conclude that the hospital's evidence preservation was reasonable.

Rosen not only had to demonstrate the hospital had a duty to preserve additional video footage, she also had to show the hospital breached that duty intentionally or negligently. *Aqua Env't Container Corp.*, 102 N.E.3d at 301. Our review thus involves two layers of reasonableness—we are evaluating whether the trial court reasonably concluded that the hospital's efforts to preserve relevant evidence were reasonable.

"When adverse litigation becomes reasonably foreseeable, the duty to preserve applies only to then-existing items or information reasonably likely to be relevant to, or likely to lead to the discovery of evidence relevant to, claims or defenses at issue in the contemplated litigation." *Montana State Univ.-Bozeman v. Montana First Jud. Dist. Ct.*, 426 P.3d 541, 552–53 (Mont. 2018). That includes a duty to suspend a "routine records or resource retention, destruction, or recycling policy or practice." *Id.* at 553; *see also* Margaret M. Koesel & Tracey L. Turnbull, *Spoliation of Evidence: Sanctions and Remedies for Destruction of Evidence in Civil Litigation* 19 (ABA

---

[3] After acknowledging this point at oral argument in our Court, appellant's counsel pivoted to argue that whether a party spoliated evidence is a question the jury should answer rather than the trial judge. Courts and commentators are divided over whether that is a question for the judge or jury. *Contrast Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 19–20 (Tex. 2014) ("Placing the responsibility on the trial court to make spoliation findings and to determine the proper remedy is a key mechanism in ensuring the jury's focus stays where it belongs—on the merits."), *with Rodriguez v. Webb*, 680 A.2d 604, 607 (N.H. 1996) (explaining that it was proper for the jury to decide whether the defendant intentionally spoliated evidence); *see also* Pollis, *supra*, at 104 (acknowledging that "the determination whether or not spoliation has occurred is usually left to the judge" but arguing that instead the jury should decide "spoliation-related factual questions"). But as counsel also acknowledged, there was no argument in the trial court that the jury should decide whether the hospital spoliated evidence, Oral Argument at 12:20–13:35, so this new argument is forfeited on appeal. *Finnegan v. State*, 240 N.E.3d 1265, 1270 n.3 (Ind. 2024). And to the extent counsel contends the argument was not made in the trial court because that court was constrained by binding appellate precedent to the contrary, Rosen's appellate briefing did not urge the overruling of any precedent.

3d ed. 2013) ("Many computer systems have automatic deletion features that periodically purge electronic documents, so once the duty to preserve is triggered, a party must also take active steps to halt any automatic deletion process."). "Of course, an organization need not preserve every shred of paper, every e-mail, text message or other electronically stored information once it recognizes the threat of litigation." Koesel & Turnbull, *supra*, at 18.

The party only must do what is reasonable given the circumstances. *See Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 20 (Tex. 2014) ("If a party possesses a duty to preserve evidence, it is inherent that a party breaches that duty by failing to exercise reasonable care to do so."); *see also* Koesel & Turnbull, *supra*, at 21 ("Even though parties must take reasonable steps to preserve relevant evidence, they are not required to make extraordinary efforts to retain evidence."). Of course, part of acting reasonably is acting in good faith. *See DR Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 945 (N.D. Ill. 2021) ("In discovery, the parties have an obligation to conduct themselves in good faith."). For example, a party may act in bad faith and unreasonably when it implements or designs a document or data retention protocol for the purpose of disadvantaging a litigation adversary. *See* Koesel & Turnbull, *supra*, at 36 ("Legitimate document retention policies are created in part to keep adverse information from getting into the hands of others. But implementing a document retention program to disadvantage a potential defendant or as part of a litigation plan may support a finding that an organization acted in bad faith.").[4]

Here, just days after the fall, the hospital preserved video of the fall and sent that video to Rosen's counsel with the unanswered invitation to let

---

[4] Effective January 1, 2026, our Trial Rule 37(D) provides that "[a] court may impose sanctions on a party for failing to take reasonable steps to preserve electronically stored information that is relevant, material to the litigation, should have been preserved in anticipation of or during litigation and is lost because a party fails to take reasonable steps to preserve it, cannot be restored or replaced through additional discovery, and either prejudice results to another party from loss of the information or the party acted with the intent to deprive another party of the information's use in the litigation."

the hospital know if counsel needed anything further. At least when assessing the strength of Rosen's argument that the hospital should have known to preserve earlier footage, the trial judge could consider that Rosen's counsel didn't complain about the length of the video the hospital produced until well over a year later when filing spoliation motions. If it wasn't initially apparent to Rosen's counsel that earlier footage could be relevant to her claim, then the trial judge could conclude it wasn't reasonable to expect that to be apparent to the hospital either.

As for the remaining unpreserved video, Panek submitted an affidavit explaining his routine practice for preserving video after someone falls on the premises and how he followed that practice here. Rosen does not claim that Panek's testimony was inaccurate or untruthful, does not explain why his protocol for preserving video of falls is an unreasonable one, does not argue that the protocol was implemented or executed in bad faith, and does not explain why the only reasonable conclusion a trial judge could reach is that Panek should have deviated from his protocol in this case.

Panek had to draw the line somewhere, and Rosen acknowledges our Court shouldn't draw that line as a matter of law. For example, she doesn't propose that we hold that surveillance video of a fall must be preserved beginning at some particular point before the fall through some particular period after the fall, whether five minutes, an hour, a day, or some other period. Nor does she propose any particular standard a party could apply when deciding how much video to preserve before and after a fall. Instead, just as when trial judges exercise their judgment to determine what evidence is discoverable and then later what evidence is admissible at trial, we must continue to leave fact-intensive, circumstances-specific judgment calls about spoliation to our trial judges' discretion. *See* Laura A. Adams, *Reconsidering Spoliation Doctrine Through the Lens of Tort Law*, 85 Temp. L. Rev. 137, 143–44 (2012) ("Identifying the trigger and scope of the preservation obligation requires a fact-intensive inquiry, made difficult by the parties' imprecise knowledge about the subject matter of the litigation prior to the filing of a complaint. Moreover, case law does not provide consistent guidance about what a party must

do to meet its obligation."). And the judge exercised that discretion reasonably here.

A final word about Rosen's preservation letter. To the credit of plaintiff's counsel, counsel promptly sent a letter just a few days after Rosen's fall informing the hospital that Rosen had retained a lawyer and was considering a claim, thus precluding any doubt at that point that the hospital's duty to preserve evidence was triggered. Also, rather than relying only on broad boilerplate, the letter helpfully identified specific evidence plaintiff's counsel thought the hospital had, such as "incident reports" and "video and/or photos which show my client being injured." Appellant's App. Vol. 2 at 135.

At times, the hospital has seemed to argue that the preservation letter created an outer limit for proper discovery requests or that compliance with the letter created a spoliation safe harbor. Those views are mistaken, as the Court of Appeals correctly noted, *Rosen*, 257 N.E.3d at 14 n.2, and as the hospital's counsel acknowledged at oral argument in our Court. A preservation letter may be relevant to whether litigation was reasonably foreseeable and whether it was reasonably foreseeable that particular evidence would be discoverable. And compliance with the letter may be one relevant consideration in evaluating the reasonableness of a party's preservation efforts (considered among all the other circumstances). But when it is reasonably foreseeable that evidence will be discoverable in litigation, the party has a duty to preserve that evidence regardless of whether the evidence is identified in a preservation letter.

Having decided the trial court reasonably concluded that the hospital did not spoliate evidence, we next consider whether the trial court erred by precluding Rosen from questioning the hospital's witnesses about the unpreserved footage.

## II. The trial court did not abuse its discretion when it prohibited Rosen from mentioning other cameras and footage during the trial.

Before trial, the trial court granted the hospital's motion in limine and barred any "argument, questions, testimony, or evidence suggesting that (a) video footage existed or does exist (b) substantiating plaintiff's claim of negligence; (c) that was or is being withheld or has been destroyed by defendants or by defendants' attorneys." Appellant's App. Vol. 3 at 24, 30. At trial, the trial court reaffirmed its ruling and sustained objections to questions about the unpreserved videos. Rosen argues that barring her from asking questions about the unpreserved footage was an abuse of discretion for three reasons, but we do not find any of them persuasive.

First, she argues evidence that the hospital failed to preserve the video footage was admissible to impeach Steven Stimac, who oversaw maintenance for the building where Rosen tripped. Stimac testified in his Trial Rule 30(B)(6) deposition that he was aware of only one camera in the location where the fall occurred, that he wasn't sure whether there were any other cameras in the area, and that the security department would know if there were more. After his deposition concluded, he conferred with other hospital personnel and submitted an errata sheet supplementing his testimony to say that "there is an additional camera in the lobby which is pointed North toward the reception desk and would not have captured the fall." Appellant's App. Vol. 2 at 106. He also noted there was a security camera in the nearby gift shop. *Id.* But Timothy Panek had reviewed the footage from that camera and observed it did not capture the fall.

At trial, when plaintiff's counsel asked Stimac whether it was the hospital "that selected that video," he answered that the video played at trial was "the video that depicted the incident." Tr. Vol. 3 at 65:15–16. When counsel next asked how he knew that, he responded that "[a]fter further investigation with our security department, that was the only video that depicted the incident." *Id.* at 65:17–19. The trial court then sustained an objection to the next question: "Did you see the other videos?" *Id.* at 65:20–21; 66–67.

Rosen argues she should have been able to ask Stimac about the other unpreserved videos because prior inconsistent statements are ordinarily proper evidence for impeachment. *See Collins v. State*, 521 N.E.2d 682, 685 (Ind. 1988) ("Prior inconsistent statements may be used to impeach a witness so long as a proper foundation is first laid."). But the hospital responds, and we agree, that Rosen has not identified any inconsistent statements. There is nothing inconsistent in Stimac's statements that he knew of only one video capturing the fall; that he later learned from other hospital personnel that there were other cameras in the area, but they didn't capture the fall; and that the hospital produced the video played at trial because that was the only video that captured the fall.

Second, Rosen argues the evidence was relevant to impeach the hospital's accident reconstruction expert, Michael Whitley. Whitley testified that in his opinion, based in part on the video, "there is no physical evidence or testimonial evidence to support there being a defect in the mat before Ms. Rosen fell." Tr. Vol. 3 at 242:4–246:12, Tr. Vol. 4 at 4:18–23. Rosen argues she should have been able to cross-examine Whitley about his failure to review the other unpreserved video, which she believes would have undermined his credibility and the strength of his opinion. This argument fails because Rosen does not explain how video that did not capture the fall or show the portion of the mat over which Rosen tripped would be relevant to Whitley's opinion about what caused the fall and the condition of the mat.

Third, Rosen argues that Whitley's testimony analyzing the preserved video opened the door to this evidence because, without the barred evidence, the jury was left with the misimpression that the preserved video was "the only relevant video to the case." Appellant's Br. at 28. This argument fails because what Rosen describes as a misimpression was an accurate impression—the trial judge reasonably concluded the video was

the only relevant video. Video that captured the fall was relevant. Video that didn't capture the fall was irrelevant.[5]

In sum, the trial court's evidentiary rulings were reasonable judgment calls within the trial judge's discretion, and we must defer to those rulings.

# Conclusion

For these reasons, we affirm the judgment.

Rush, C.J., and Massa and Slaughter, JJ., concur.
Goff, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT
Angela M. Jones
Pillar Jones, LLC
Crown Point, Indiana

Steven J. Sersic
Smith Sersic, LLC
Munster, Indiana

ATTORNEYS FOR APPELLEE
Gregory A. Crisman
Zachary R. Peifer
Eichhorn & Eichhorn, LLP
Hammond, Indiana

---

[5] Under Appellate Rule 58(A)(2), we summarily affirm the holding of the Court of Appeals that the trial court did not err by precluding evidence related to the adequacy of the hospital's post-fall investigation because that evidence was irrelevant. *Rosen*, 257 N.E.3d at 16–17.

ATTORNEY FOR *AMICUS CURIAE* THE INDIANA TRIAL LAWYERS ASSOCIATION

Katherine A. Piscione

Waldron Tate Bowen Land LLC

Indianapolis, Indiana

**Goff, J., dissenting.**

Caryl Rosen sued Community Healthcare System (the Hospital) for negligence after she tripped over a mat in the Hospital's lobby and fell. Less than a week after the fall, Rosen's counsel sent a letter to the Hospital requesting that it preserve any video footage or photos showing Rosen being injured. The Hospital responded by sending a ten-to-twelve-second-long video (the Preserved Video) showing Rosen's fall, but the footage was taken at an angle and about seventy-five feet away from the mat. The portion of the mat Rosen allegedly tripped over was also not visible because it was blocked by a pixelated object, likely a wheelchair. The Hospital did not retain that camera's footage from earlier in the day, which might have shown the condition of the mat. Rosen later learned of two other cameras recording the main lobby at the time of her fall, but the Hospital did not preserve the footage from these cameras after a security supervisor determined that only the Preserved Video captured the fall.

At trial, Rosen argued the Hospital engaged in spoliation and moved for sanctions which the trial court denied. The trial court also refused to provide Rosen's proposed adverse-inference jury instruction which read, "If a party fails to produce a document or physical evidence under the party's exclusive control, you may conclude that the documents or evidence would have been unfavorable to the party's case." Appellee's App. Vol. 2, p. 141. The jury returned a verdict in favor of the Hospital. Rosen appealed, and the Court of Appeals reversed in part, concluding that the trial court erred in ruling that the Hospital did not engage in spoliation. *Rosen v. Cmty. Healthcare Sys.*, 257 N.E.3d 6, 17 (Ind. Ct. App. 2025). This Court vacated the Court of Appeals' opinion and concludes on transfer that the trial court did not abuse its discretion in finding no spoliation and declining to give Rosen's proposed jury instruction. *Ante*, at 6–7. I respectfully dissent from the Court's conclusion that the trial court did not abuse its discretion in declining to give Rosen's proposed jury instruction. In my view, whether the Hospital spoliated evidence here is a fact-sensitive issue that is more appropriately decided by a jury.

Spoliation is a "discovery abuse that involves the intentional or negligent destruction, mutilation, alteration, or concealment of physical

evidence" in pending or reasonably foreseeable litigation. *In re Paternity of A.J.*, 146 N.E.3d 1075, 1083 (Ind. Ct. App. 2020) (quoting *N. Ind. Pub. Serv. Co. v. Aqua Envt'l Container Corp.*, 102 N.E.3d 290, 300–01 (Ind. Ct. App. 2018)), *trans. denied*. A party "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Miller v. Fed. Express Corp.*, 6 N.E.3d 1006, 1013 (Ind. Ct. App. 2014) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)), *trans. denied*. A party claiming spoliation must prove that "(1) there was a duty to preserve the evidence, and (2) the alleged spoliator either negligently or intentionally destroyed, mutilated, altered, or concealed the evidence." *Synergy Healthcare Res., LLC v. Telamon Corp.*, 190 N.E.3d 964, 968 (Ind. Ct. App. 2022).

This Court holds that the trial court did not abuse its discretion because the video from the first camera was so pixelated that earlier footage would not have shown the condition of the mat. *Ante*, at 8. The Hospital's failure to retain footage from the other two cameras was also reasonable, the Court explains, because the other cameras captured only the corners of the mat and not the portion of the mat Rosen tripped over. *Id.* at 9. In contrast, the Court of Appeals concluded the Hospital did engage in spoliation because footage from before the wheelchair was positioned might have shown the condition of the mat. *Rosen*, 257 N.E.3d at 14. And while the security specialist swore he preserved the only video of the fall, the panel reasoned, neither he nor any other Hospital employee said there was no other source indicating the condition of the mat. *Id.* Because the relevant evidence in a premises-liability case includes any evidence of the condition of the premises, not just the evidence of the injury, the Court of Appeals concluded that the Hospital engaged in spoliation. *Id.*

The Court acknowledges that the Court of Appeals' view of the evidence is reasonable, and had the trial judge reached the same conclusion as the Court of Appeals, this Court might have affirmed that judgment too based on the deferential standard of review. *Ante*, at 9. With two reasonable interpretations of the facts, then, it would seem

appropriate to have the jury determine whether spoliation occurred and what inferences to draw from the missing evidence.[1]

As one commentor observes, "One might expect that the fact-intensive nature of a spoliation determination—including the determination of the spoliator's bad faith—would be the ideal type of dispute to submit to juries. After all, the very purpose of the jury in our modern litigation system is to resolve factual disputes." Andrew S. Pollis, *Trying the Trial*, 84 Geo. Wash. L. Rev. 55, 104 (2016). Rather than having a court decide if spoliation occurred and then impose an adverse-inference jury instruction as a sanction, it may make more sense to allow the attorneys to present evidence of spoliation at trial and then allow each side to argue permissible inferences that the jury could draw from the missing evidence. Charles W. Adams, *Spoliation of Electronic Evidence: Sanctions versus Advocacy*, 18 Mich. Telecomm. & Tech. L. Rev. 1, 6 (2011). In *Rodriguez v. Webb*, for example, the defendant argued he destroyed the relevant evidence (a baling machine) to avoid further injury to others at his factory while the plaintiff argued the defendant was attempting to hide evidence of negligence. 680 A.2d 604, 605, 607 (N.H. 1996). In my view, the parties should be allowed to argue to the jury what inferences they should draw from the destruction of relevant evidence.

Here, the trial court should have had the parties present evidence on the destruction of the video footage, had the parties argue what inferences to draw from the destruction of evidence, and given Rosen's proffered instruction. Rosen's proposed instruction stated, "*If* a party fails to produce a document or physical evidence under the party's exclusive control, you *may* conclude that the documents or evidence would have been unfavorable to the party's case." Appellee's App. Vol. 2, p. 141 (emphases added). Such instruction would have allowed the jury to

---

[1] The Court concludes that Rosen forfeited her argument that whether a party spoliated evidence is a question the jury rather than the trial judge should answer. *Ante*, at 10 n.3. I would address the argument because Rosen proffered a jury instruction that would have allowed the jury to consider whether evidence was spoliated and what inferences it could draw.

determine whether spoliation even occurred, and from there, the jury could decide what inferences to draw. After hearing argument from the parties, the jury "may" have concluded the Hospital destroyed the footage because it was unfavorable, or the jury "may" have concluded the Hospital destroyed the footage because it was unhelpful to the case. Because of the fact-sensitive nature of spoliation, the issue seems ideal for a jury to resolve.